## Richmond.

### CURTIS v. COMMONWEALTH.

#### April 2nd, 1891.

1. CRIMINAL PROCEEDINGS—*Motion in arrest of judgment.*—At trial for murder, the court overruled motion in arrest of judgment, but set aside verdict the next day *ex mero motu: held,* defendant not entitled to discharge on the ground that his motion in arrest of judgment had' been allowed.

2. IDEM—*Grand jury—Record—Petit jury.*—It has never been held that the award of process to summon a grand jury must affirmatively *appear by the record*—as is the rule as respects the petit jury.

3. IDEM—*Objections to grand jury— When made.*—Exceptions to mode of summoning grand jury, or to disqualification of particular jurors, must be made at a preliminary stage of the case; that is, before the general issue is pleaded; and the award of new trial does not expunge such plea.

4. IDEM—*Setting cases for trial.*—The statute requiring county and corporation judges, at least ten days before commencement of every term, to set each criminal case for trial on a certain day, does not apply to the circuit court. (Acts 1889–90, p. 79.)

5. IDEM—*Venire.*—Of the twenty persons directed to be summoned from the list furnished by the judge to serve as jurors the appearance of sixteen is sufficient in felony cases. Additional persons may be summoned from the by-standers.

6. IDEM—*Examination on voir dire.*—Where part only of those summoned are found free from exception, it is not necessary to keep such part together, until the panel is complete, and then again to examine them on their *voir dire.*

7. IDEM—Where trial, interrupted by a sudden fit, and the removal, of prisoner, was resumed upon his restoration and return into court: *held,* not error.

8. IDEM—*Indictment—Proof—Variance.*—Where the wound is alleged to have been on right side of decedent's head, and the proof is that it was on the left: *held,* no variance.

9. IDEM—*Motion for new trial—Case at bar.*—The evidence disclosed by the record, *held,* such as justified the jury in finding that the death was produced by the wound on the head, and not by burning.

Error to judgment of circuit court of Norfolk county, rendered May 3d, 1890, in an indictment against the plaintiff in error, Henry Curtis, for the murder of one Terrence L. Waller. The verdict was guilty of murder in the first degree, and, by the judgment, he was sentenced to be hanged. Opinion states the case.

*Murdaugh & Marshall,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the Commonwealth.

LEWIS, P., delivered the opinion of the court.

The prisoner was indicted in the county court of Norfolk county for the murder of Terrence L. Waller, and upon his arraignment demanded to be tried in the circuit court of that county. He was thereupon remanded for trial in the circuit court, pursuant to the provisions of section 4016 of the Code. At the ensuing term of that court he pleaded not guilty, and, having been put upon his trial, was found guilty by the jury of murder in the first degree. He thereupon moved for a new trial, which motion was overruled, whereupon he moved in arrest of judgment, which motion also was overruled. But on a subsequent day of the term the court, of its own motion, set aside the verdict, and remanded the prisoner for trial at a special term to be held on the 24th of April then next ensuing.

On the last-mentioned day the prisoner was again led to the bar, whereupon he moved that he be discharged, on the ground that his motion in arrest of judgment at the previous term had been sustained; but the motion was overruled, to which ruling he excepted, and this ruling is the subject of the first assignment of error here.

The question thus raised is a simple one of fact, to be determined by the record, and that shows, as above stated, that the motion in arrest of judgment was overruled. Nothing more upon that point, therefore, need be said.

The prisoner next moved the court to quash the indictment, on the ground that it did not affirmatively appear from the record that a *venire facias* had been issued to summon the grand jury by which the indictment had been found; and the overruling of this motion is the subject of the second assignment of error.

In support of this assignment *Hall's Case*, 80 Va., 555, and a number of subsequent decisions of this court have been cited, to the effect that a *venire* is an indispensable process, both at common law and under the statute, to authorize the sheriff or other officer to summon a jury in a felony case, and therefore, that the record must affirmatively show that a *venire* was issued; and these decisions, it is contended, apply as well to the summoning of the grand jury as the petit jury. But this is a mistaken view.

It has never been held either in England or in Virginia that the award of process to summon a grand jury must affirmatively appear by the record, and there is no principle for so holding.

At common law the process for summoning a grand jury was a precept, either in the name of the king, or of two or more justices of the peace, directed to the sheriff. This was anterior to and independent of any action of the court, the object being to have a grand jury in attendance at the commencement of the term. The court, however, had power to have a grand jury summoned during the term, as occasion might require. *Burton's Case*, 4 Leigh, 645. By statute in Virginia, until a comparatively recent period, the sheriff was required, *ex officio*, to summon a grand jury, to attend on the first day of every term prescribed by law, as a substitute for the precept above mentioned. And now the statute, Code,

sec. 3976, provides that a *venire facias* to summon a regular grand jury shall be issued by the clerk prior to the commencement of each term at which such grand jury is required.

It by no means follows, however, because a *venire* is now the proper process to summon as well a regular grand jury as a petit jury, that the same strictness is required in each case. On the contrary, it is well settled that objections to the mode of summoning a grand jury, or to the disqualifications of particular jurors, must be made at a preliminary stage of the case, that is, before a plea to the merits; otherwise they will be considered as waived, unless, indeed, the proceeding be void *ab initio*.

"After the general issue, or any plea in bar," says Bishop, "it is too late to plead in abatement, except on leave to withdraw the former, because the plea in bar admits whatever is ground only of abatement." 1 Bish. Crim. Prac. (3d ed.), sec. 756.

This subject was very fully considered in *United States* v. *Gale*, 109 U. S., 65, in which case objection was made for the first time after verdict, on the ground of the alleged wrongful exclusion of four persons from the grand jury, and it was held that the objection came too late. The rule was recognized that where the whole proceeding of forming the panel is void, as where the jury is not a jury of the court or term in which the indictment is found, or has been selected by persons having no authority whatever to select them, objection may be taken at any time. But where the objection, it was said, is founded upon an irregularity in summoning the panel, or upon the disqualification of particular jurors, it must be taken before pleading in bar. It would be trifling with justice, it was added, and would render criminal proceedings a farce, if the rule were otherwise.

In *State* v. *Carver*, 49 Me., 588, the defendant, after a general plea of guilty, moved in arrest of judgment, on the ground

that the grand jury had not been legally drawn, and had no power to act in the premises. But the motion was overruled, although it appeared from the return on the *venire facias* that one of the grand jurors had no authority to act as such. It was held, however, that neither the *venire* nor the return thereon constituted any part of the record, and, moreover, that by pleading generally to the indictment, all matters in abatement were waived.

The same doctrine was recently held by this court in *Early's Case*, 86 Va., 921. In that case, which was an indictment for arson, the prisoner, upon his arraignment, pleaded not guilty, and at a subsequent term asked leave to withdraw the plea and to plead in abatement, on the ground that the grand jury had not been legally summoned, and because one of the grand jurors was disqualified. But the trial court overruled the motion, and this ruling was affirmed. In the course of its opinion this court said:

"By pleading the general issue alone, a defendant has always been understood to waive the right to interpose afterwards a plea in abatement. The settled doctrine, however, is that the judge may permit a pleading to be withdrawn, and another one to be substituted, whenever by so doing he does not violate any positive rule of law or of established practice. But such a discretion will rarely, if ever, be exercised in aid of an attempt to rely upon a merely dilatory or formal defence."

In the present case the prisoner, upon his arraignment in the circuit court, pleaded not guilty, upon which plea alone the trial was had. When the verdict was afterwards set aside and a new trial awarded, the case was in the same situation in which it was when the first trial begun; that is to say, all the proceedings subsequent to the joinder of issue on the plea having been set aside, the Commonwealth and the prisoner were at issue on the plea of not guilty. To say that the effect of granting a new trial is to "expunge," as has been claimed

in this case, the plea previously entered, and to leave the case just as if there had been no plea entered at all, is to assert a proposition not founded in reason, and one that has never been recognized in any jurisdiction where the rules and practice of the common law prevail.

If the plea of the general issue in such a case is "expunged," so also is the indictment, for the latter is no more a part of the pleadings than the former; and will it be contended that the effect of granting a new trial is to necessitate a new indictment against the accused? Blackstone says that after the prisoner in a felony case has been arraigned, and has pleaded not guilty, "they then proceed, as soon as conveniently may be, to the trial"; which is tantamount to saying that not until after the pleadings have been made up does *the trial* begin. And a new trial necessarily begins where the previous one did, unless by leave of the court the plea of the general issue is withdrawn and another plea substituted, or unless the accused pleads, as he may do, a special plea in bar.

Hence, when the prisoner in the present case undertook, on the second trial, to contest the validity of the indictment on the ground already mentioned, he sought to assert a dilatory defence, which, by the plea of not guilty, had been waived, and which plea he did not ask leave to withdraw. The objection, therefore, came too late, as the circuit court held.

The subject of the next assignment of error is the refusal of the court to grant a continuance. The motion for continuance was based on the ground that the case had not been set for trial ten days before the commencement of the term, as required by the act approved February 24, 1890, which makes it the duty of the judge of each county and corporation court, at least ten days before the commencement of every term, to set each criminal case then pending for trial on a certain day, etc. Acts 1889–90, p. 79. But this act applies to county and corporation courts only. It was not intended, as both its terms and title indicate, to apply to circuit courts, and, even

if it embraced circuit courts, the result would be the same, inasmuch as the order granting a new trial, which was entered on the 31st of March, virtually set the case for trial on the 24th of the ensuing month.

The next question arises upon the prisoner's bill of exceptions, which states that, of the twenty persons ordered to be summoned from the list furnished by the judge to serve as jurors, only sixteen attended, whereupon the prisoner moved the court to compel the attendance of the remaining four so as to complete a panel of twenty persons, which motion the court overruled.

The statute provides that "in any case of felony, where a sufficient number of jurors to constitute a panel of sixteen persons, free from exception, cannot be had from those summoned and in attendance, the court may direct another *venire facias*, and cause to be summoned from the bystanders, or from a list to be furnished by the court, so many persons as may be deemed necessary to complete the said panel." Code, sec. 4019. And this provision of the statute was conformed to in the present case.

It also appears that of the sixteen persons who attended in pursuance of the original *venire*, only six were found free from exception. These were adjourned over until a future day of the term, and were allowed to separate, but only after being cautioned by the court not to converse, or to allow any one to converse with them, about the case. It also appears that they were subsequently sworn upon the jury without being again examined on their *voir dire*. The prisoner complains of this action of the court, but we perceive no just ground for complaint. It was not necessary to keep the six *venire-men* together until the jury was completed, nor is there any suggestion in the record that they, or either of them, disobeyed the admonition of the court as to conversing, or allowing conversation to be had with them, concerning the case. And it was not the duty of the court, under these circumstances,

*ex mero motu,* to again examine them on their *voir dire.* The statute does not require it, and there is no rule of practice or of the common law that requires it.

The next question arises upon the prisoner's eighth bill of exceptions, which states that, in the progress of the trial, the prisoner was taken apparently with a fit, and fell or jumped from his seat to the floor, where he laid until carried to a private room. The court thereupon suspended the trial and summoned two physicians, who, after making an examination of the prisoner, testified that, in their opinion, he was sane and "shamming," although evidently laboring under great mental excitement. After the examination by the doctors, the prisoner, escorted by two deputy sheriffs, walked out of the court-room into the courthouse yard, and soon afterwards returned to the prisoner's box, where he remained during the further progress of the trial. Under these circumstances the question is, whether the circuit court, upon the return of the prisoner, rightly resumed and proceeded with the trial, and we are of opinion that it did. At all events, if it did not, the error is not apparent from the record, which, in the disposition of the case in the appellate court, amounts to the same thing. *Harman* v. *City of Lynchburg,* 33 Gratt., 37; *Early's Case, supra.*

The next question relates to the action of the court in overruling the motion for a new trial. It is contended that the motion ought to have been sustained, on the ground of a variance between the allegations of the indictment and the proof.

The indictment charges that the prisoner killed the deceased by means of blows inflicted on the head. At the trial, one of the principal witnesses for the Commonwealth, Dr. George Christian, testified that he was present at the coroner's inquest, and found a slight flesh wound on the forehead of the deceased and a wound on the left eye; that the eye was much bruised, and the frontal bone was crushed, which seemed to have been done with a blunt instrument; that, in his opinion,

the last two wounds produced concussion of the brain, from which the deceased died; that the body of the deceased had been badly burned, which by possibility caused his death, but he did not think it probable; that, in his opinion, the burning was done to cover up the crime.

Another witness for the Commonwealth testified that the prisoner, after his arrest, confessed that he had killed the deceased by knocking him on the head with a stick of wood. To this witness the prisoner stated that, about an hour before daylight, on the morning of the homicide, he went to the store of the deceased, in Norfolk county, and awakened him, telling him he wanted quinine for a sick lady; that, when the deceased opened the door, he struck and knocked him down, as before stated; that he was accompanied to the store by Robert Custis, John Hardy and George Prior, their object being to kill the deceased for the purpose of stealing his money; that when he (the prisoner) knocked the deceased down, Robert Custis struck him with a hatchet; that afterwards Hardy threw a mattress, saturated with kerosene oil, on his prostrate body, and then ignited it.

He also stated in his confession at the examination before the committing magistrates, that after the mattress had been set on fire, he heard the deceased groan. But he admitted that that was after he had left the store, and while he was at a certain walnut tree, which, by actual measurement, is distant from the store about one-third of a mile. And it was proved, moreover, that the wind was blowing at the time in the direction of the store from the tree.

In this state of the evidence, the court instructed the jury as follows:

"That unless the jury believe, beyond a reasonable doubt, that the death of the deceased ensued from a blow or blows received at the hands of the prisoner, and not by burning, they must acquit the prisoner."

The case having been thus submitted to the jury, they

found the prisoner guilty of murder in the first degree, and, as we think, correctly. The indictment, it is true, charges that the blows were inflicted on the right side of the head of the deceased, whereas the proof is they were on the left side; but this is not such a discrepancy between the *allegata* and the *probata* as amounts, in legal contemplation, to a variance.

At common law, while an indictment for murder must show with certainty in what part of the body the deceased was wounded, the same strictness is not required as to the evidence necessary to support it. If, for instance, say the authorities, the wound be stated to be on the left side, and proved to be on the right, or alleged to be on one side of the body and proved to be on the other, the variance is immaterial. 2 Hale P. C., 186. In such case the substance of the issue is proved, and that is sufficient. 1 Greenl. Ev., sec. 65. So in *Lazier's Case*, 10 Gratt., 708, it was held to be no more necessary to prove that the wound was in the same part of the body in which it is alleged to have been than it is to prove the length and depth of the wound as alleged in the indictment. See also 2 Bish. Crim. Prac. (3d ed.), sec. 525.

The judgment of the circuit court, approving the verdict, must, therefore, be affirmed.

JUDGMENT AFFIRMED.