# SUPREME COURT OF APPEALS

## OF

# WEST VIRGINIA.

---

## WHEELING.

| 56   1|
|e57 231|

### STATE v. PINE.

Submitted June 14, 1904—Decided June 18, 1904.

1. INSTRUCTIONS—*Error—New Trial.*

 The giving of instructions, predicated upon two different hypotheses in favor of the State in a criminal case, in support of one of which there is no evidence, and the refusal of a proper instruction embodying the one theory which the evidence tends to establish, is prejudicial error, calling for a new trial. (p. 10).

2. INSTRUCTIONS—*Error.*

 When, in a criminal case, the court gives erroneous instructions at the instance of the State, and refuses a proper one asked for by the defendant, and afterwards gives, at the instance of defendant, instructions embodying the erroneous propositions contained in the instructions given for the State, the action of the court in respect to the defendant's instructions is tantamount to an erroneous modification of the defendant's proper instruction, and he is not estopped from complaining of the action of the court. (p. 10).

3. FORGERY—*Evidence.*

 To convict a city clerk of the forging of an instrument purporting to be an order for the payment of money out of the treasury of the city of which he is clerk, bearing the genuine signature of himself and the mayor of such city, upon the

theory of his having fraudulently made such order, the State must show that the order was made by him without authority so to do.   (p. 8).

Error to Circuit Court, Tyler County.

James H. Pine was convicted of forgery, and brings error.

*Reversed.*

HUNT & STAPLES, for plaintiff in error.

The ATTORNEY GENERAL and J. H. STRICKLING, for the State.

POFFENBARGER, PRESIDENT:

James H. Pine assigns errors in a judgment, rendered by the circuit court of Tyler county, upon a verdict of guilty of the offense of forgery, and sentencing him to imprisonment for a period of six years.

After having entered a plea of not guilty, he was permitted to withdraw it, and demur to the indictment, and upon the overruling of the demurrer, he again entered his plea in bar.   The paper alleged to have been forged purports to be a city order of the city of Sisterville for the sum of $325.00, drawn upon the treasurer of said city, payable to Bently and Gerwig, signed by C. W. Grier, Mayor and Jas. H. Pine, City Clerk, and contains the clause "after deducting therefrom all taxes and fines due from bearer to said city"; and the point urged on the demurrer is that, as the order purports to be for the payment of money conditionally and not absolutely, the indictment ought to aver that no taxes or fines were due from the bearer.   For this proposition, 2 Bish. New C. L. secs. 533 and 545, are relied upon. The rule here invoked applies only when the instrument forged is invalid on its face or is frivolous in character, not purporting to create any liability, conditional or absolute.   That the acceptance of a conditional order may be the subject of forgery has been decided, *Com. v. Ayer*, 3 Cush. (Mass.) 150.   So also, in *Com. v. Costello*, 120 Mass. 358, it was held that an indictment for the forgery of a bond to dissolve an attachment, a conditional obligation, need not set forth how the bond could have been used to defraud.   The order set forth in this indictment, however, discloses upon its face how it may be used to the prejudice of

the city of Sistersville, even though as to the mere payment of money it is conditional. If fraudulently issued and based upon no consideration, would it not be to the prejudice of the rights of the city to allow credit for it on account of taxes or fines due? Does it not, on its face call for money due from the city treasury or for credit upon demands due to the said treasury? Its use in either way, if falsely and frauduletly made, would defraud the city.

Upon the overruling of the demurrer, the plea in bar was re-entered. The record shows this to have been done August 12, 1903, and that, on the following day, the accused was permitted to file two pleas in abatement, alleging respectively as cause of abatement, that "the records of this court do not show that any *venire facias* was ever issued for the drawing, summoning or empaneling of the grand jury which found the said indictment," and that "there was no *venire facias* authorizing the drawing, summoning or empaneling of the grand jury which found the said indictment." Demurrers to these pleas were sustained, and then a third plea setting up the same matter was tendered but the court refused to allow it to be filed. Thereupon the prisoner asked leave to withdraw his plea of not guilty and to file said third plea in abatement, and offered in support of his motion the joint affidavit of his attorneys, showing that at the time of the rejection of said pleas in abatement, the plea in bar, although entered *ore tenus,* had not been extended in the order book. The affidavit further showed that the want of a *venire facias* had not been discovered until after the second entry of the plea in bar. This last motion, the affidavit and the action of the court in overruling, are shown by a bill of exceptions.

Several questions are raised on these pleas in the brief, but it suffices here to say they were all tendered too late. They are dilatory in character, such as, under all the authorities, must be presented before pleading in bar. Before any of them were tendered, there had been a demurrer to the indictment and then a plea of not guilty. After these steps it is in the discretion of the trial court to refuse to allow the plea in bar to be withdrawn for the purpose of entertaining pleas in abatement, and the appellate court will not interfere with the exercise of such discretion unless it appears to have been abusive. "Pleading the

general issue waives plea in abatement. But the court hath
discretion to allow that plea to be withdrawn and another sub-
stituted, but will not do so in favor of a merely formal defence."
*Early* v. *Com.* 86 Va. 921. The matters sought to be set up in
abatement in that case, after the plea in bar had been entered,
were that the grand jury had not been summoned according to
law, and that one of the grand jurors was not a qualified juror.
So the case is almost exactly in point. In *Curtis* v. *Com.*, 87 Va.
589, there had been a conviction and a new trial granted, and
then the defendant moved the court to quash the indictment on
the ground that it did not affirmatively appear from the record
that a *venire facias* had been issued to summon the grand jury
which had found the indictment, but the motion was held to
have been interposed too late and was accordingly overruled.
Leave to withdraw the plea of not guilty was not asked, how-
ever, but, in the other case, *Early* v. *Com.* such leave was asked,
and refused, the court saying on this point: "In the present
case we do not see from the record that this discretion has been
improperly exercised." In *Reed* v. *Com.*, 98 Va. 817, the refusal
of the trial court to allow the withdrawal of the plea in bar to
plead, in abatement, disqualification of grand jurors was held
not to be an abuse of discretionary power. *Watson* v. *Com.* 87
Va. 608, 612, says the want of a *venire facias* must be brought
to the attention of the court before pleading to the merits in
order to be effective. *United States* v. *Gale,* 109 U. S. 65,
holds that "an objection to the qualification of grand jurors,
or to the mode of summoning or empaneling them, must be
made by a motion to quash, or by a plea in abatement, before
pleading in bar." The Federal Supreme Court adopted this
language from the opinion of Mr. Justice Parker in *Robinson's
Case,* 2 Parker's Crim. Cas. 235, 308, 311, decided by the
supreme court of New York, a case in which the irregularity
relied upon was the want of a precept for summoning the grand
jury which had found the indictment, corresponding to our
*venire facias.*

That the trial court may, in the exercise of sound discretion,
refuse to allow the plea in bar, to be withdrawn, seems to have
been the opinion of the judges of this Court when *State* v.
*Shanley,* 38 W. Va. 516, was decided, for JUDGE HOLT cited many
authorities to that effect, among which are *Pattee* v. *State,* 109

Ind. 545; *People v. Lee,* 17 Col. 76; *Phillips v. People,* 55 Ill. 429; *Com.* v. *Mahoney,* 115 Mass. 151.

It is not deemed material that the plea of not guilty had not been actually spread upon the order book when the dilatory pleas were tendered, even if that could be shown by affidavit. It had been in fact put in and issue made up on it. Nor is it of any consequence that the court allowed pleas 1 and 2 to be filed and then sustained demurrers to them. They were rejected and the existence of the plea in bar was a sufficient reason for so doing, whatever other reason the court may have found for its action.

A motion in arrest of judgment was founded upon the failure of the record to show that a *venire facias* had been issued for summoning the grand jury. The authorities already cited, amply sustain the action of the court in overruling that motion.

Upon some objection, the panel of petit jurors regularly drawn for the term of court at which the case was tried, had been quashed, and the names of forty-six other jurors drawn from the box in the presence of the court pursuant to an order so directing and reciting that such other jurors were necessary for the convenient dispatch of the business of the term. A motion to quash the new panel was overruled and this action of the court is said to have been erroneous. By its terms, sec. 14 of chap. 116 of the Code of 1899, is broad enough to confer upon the court the power to cause a new jury to be summoned under such circumstances. It does not say additional jurors may be so summoned, but that "other jurors" may be drawn by the clerk &c "whenever it shall be found necessary for the convenient dispatch of business." This section is applicable to criminal cases. *State* v. *Mills,* 33 W. Va. 455. It would be a very narrow construction of this statute, falling far short of the broad terms used, to say a new jury cannot be drawn and summoned under it, when for some irregularity, the panel is quashed, and thus delay the trials of all cases on the docket, until a subsequent regular or special term, thus subjecting parties to useless expense and trouble.

A number of exceptions were taken to the rulings of the court upon the evidence of C. W. Grier, the Mayor. He admitted the genuineness of his signature upon the order, but said he could not remember the act of signing his name to the

particular order, nor the place at which it was done. He further testified that from the appearance of the order, it had been altered after he signed it, and also that when signed by him it could not have been for so large an amount, as it was his custom and practice to look at the amounts of the orders presented to him by the clerk for his signature, and if the order in question had been for $325.00, when so presented he would not have signed it without further investigation. He was of the opinion that, as originally made out by Pine and signed by him, it called for $3.25, and had been raised. This is the substance of his testimony. The principal objection, underlying all the exceptions, is that his opinion, based upon the facts known to him and above set forth, that the order had been altered, was not admissible. The rule is well settled that mere opinion of non-expert witnesses are inadmissible. *Taylor* v. *B. & O. R. R. Co.,* 33 W. Va. 39.

But there are several classes of cases in which an opinion based upon the witness' personal knowledge of facts and observation may go to the jury. *Hepper's Case,* 6 Grat. 684; *State* v. *Harr,* 38 W. Va. 58; *State* v. *Welch,* 36 W. Va. 690. The expression of opinion here complained of was so directly founded upon the witness' personal knowledge of the facts of the transaction under investigation that it was difficult for him to explain his own connection with them, and his own acts respecting it, without giving his opinion. In other words, the expression of opinion was almost, if not quite, necessarily incidental to his narration of the facts, and we are of the opinion that the witness stated his belief or impression as to the condition of the order at the time he signed it rather than his opinion that it had been altered. This is not improper.

A similar question is raised upon exceptions to the rulings upon the testimony of J. J. McKay, assistant cashier of the First National Bank of Sistersville, who acting for the bank issued a New York draft in exchange for the order, making it payable to Bently & Gerwig, and who said Pine brought the order there and obtained the draft. On cross examination, he admitted that he based his statement largely upon his knowledge of the records of the bank respecting the transaction and the facts that the draft was in his handwriting and the order had remained in the bank thereafter and been frequently handled

by him.  But when asked to state, as matter of fact, who was
present, he said he knew Mr. Pine was present and stood in the
lobby of the bank.  The lapse of time and greatness of the
number of transactions at the bank, tending to dim the recol-
lection of the transaction, was matter for the jury and not for
the court, and the evidence was properly admitted.

William Bently, of the firm of Bently & Gerwig, in whose
favor the order purported to have been made, was permitted to
testify over the objection of the accused, that the city of Sis-
tersville did not owe said firm anything at the time of the
issuance of the order.  As shown hereafter the only issue pre-
sented by the evidence was whether the order had been altered
after it had been originally made, and the relevancy of the fact
that the city owed said firm nothing at the date of the issuance
of the order is not perceived.  We are, therefore, of the opinion
that it should not have been admitted.  On the issue of the
fraudulent making of the order originally, it might be relevant
and admissible.

The accused was the city clerk of the city of Sistersville,
having authority, and being in duty bound, as such, to issue all
orders allowed by the council of said city.  In order to convict
him of the false and fraudulent making of such an order, the
burden is upon the state to show that he issued it without au-
thority as such clerk.  As such officer, the city's blank orders
were entrusted to him to be filled out in favor of persons to whom
allowances of claims were made by the council.  If there is an
order upon the minutes of a meeting of the council, directing
payment of the sum named in the draft when issued, as stated
on the face of said draft, in the words, "as voted by the council,"
it matters not that the city did not owe the amount so allowed,
for the minutes conferred authority to make out the draft,
unless, possibly, it were further shown that the accused fraudu-
lently inserted the direction in the minutes.  Suppose the coun-
cil corruptly, or by inadvertance, should order a draft drawn in
favor of some person to whom nothing is due, and, in pursu-
ance of such order, the clerk should make out the draft and de-
liver it?  Could it be said he had fraudulently made the in-
strument?  By no means.  The record of this case is silent as
to whether the amount inserted in the draft, or any other
amount, had been allowed to Bently & Gerwig.  It contains not

a word, of evidence documentary or any other kind, denying the existence of such an allowance. As the burden is upon the state to prove that the accused fraudulently made the draft, in order to convict on the theory of a fraudulent making, the omission of evidence tending to show that the council had not ordered it made, is fatal to that theory.

Though no case directly in point has been found, the principle is the same as that illustrated in 3 Greenl. on Ev. (15th Ed). sec. 109, under which, if the prisoner, on uttering a forged note made payable to himself, represent the maker as being at a particular place and engaged in a particular business, it is necessary for the state to prove that it is not that person's note, in order to make out a *prima facie* case. So where the prisoner obtains money from a person, for a check drawn by G. A. upon a certain banking house, the state may show that no person of that name had an account, or funds or credit, in that house, and so make out a *prima facie* case. See other similar illustrations in said section. Surely the state must show that the order is false and fraudulent, and how can it be done except by showing want of authority to make it out?

The case is analagous to those of *People* v. *Dickie,* 62 Hun. (N. Y.) 400, and *State* v. *Kroeger,* 47 Mo. 552. The first of these asserts and decides that where the cashier of a firm had been intrusted with checks, payable to his order. signed by the firm, and left blank as to date and amount, to be used by him for certain specified purposes only, and he filled out one of them in his own favor, indorsed it in blank, obtained the money on it, failed to enter the cash in the check book, and fled almost immediately, he was guilty of forgery. In the other case the treasurer of the City of St. Louis had left with Kroeger certain blank checks, with directions to fill them up to the use of holders of warrants against the city, and he took one of them, and after making slight alterations in it, filled it out, obtained the money on it, and converted it to his own use. A conviction on a charge of forgery based on these facts, was sustained. These decisions are founded upon the following similar English cases: *Reg.* v. *Bateman,* 1 Coxe C. C.; *Regina* v. *Minterhart,* 7 Car. & P. 652; *Reg.* v. *Wilson,* 2 Car. & P. 527; and *Reg.* v. *Richardson,* 2 Foster & Fin. 343. These cases declare that the unauthorized filling up of blanks in checks, notes, acceptances and similar

instruments of commercial character amounts to forgery. It is manifest that the gist of the offense in these cases is the making of such paper without authority, in other words, the doing of the act in excess of authority. This is the principal fact establishing the elements of falsity and fraudulency in the making of the paper. The signatures to the paper in question here are admittedly genuine. They constitute in legal effect the signature of the city, and, hence the paper is very similar to a check signed in blank, and if the accused committed forgery in the making of the order, it is because he exceeded his authority in doing so, and did it with intent to defraud. But the want of authority is not shown.

Regarding this as sound law applicable to the case, we hold that the court erred in giving, at the instance of the state, the following instructions, presenting to the jury a theory of the case not founded upon evidence to sustain it:

"No. 1. The jury are instructed that forgery is the fraudulent making or alteration of a writing to the prejudice of another's rights and if you believe from the evidence beyond a reasonable doubt that James H. Pine, the defendant, fraudulently made or altered the order in evidence, and falsely and fraudulently procured the signature of C. W. Grier, Mayor, to said order, with intent to defraud, then you shall find him guilty as charged."

"No. 2. The jury are instructed that if you believe from the evidence beyond a reasonable doubt that the defendant, James H. Pine, fraudulently made the order in evidence, and fraudulently procured the signature of C. W. Grier, Mayor, to the same, with intent to defraud, you shall find defendant guilty as charged."

"No. 6. The jury are further instructed that in determining what was the intent of the defendant, James H. Pine, in making the order in evidence, if you believe from the evidence that he fraudulently made said order you may consider all his acts and statements made by him relating to said order which may have been proved by the evidence and all the benefits he has received, if any has been proved from the forging or uttering of said order."

Instructions 2, 3, and 4 requested by the prisoner were so obviously bad that discussion of them is unnecessary. His in-

struction No. 5 should have been given. The fact of no indebtedness to the city is of itself insufficient to show want of authority to issue the order, and on the question of alteration it is immaterial.

·The court also erred in refusing instruction No. 6 asked for by the prisoner, which reads as follows: "The court instructs the jury that the offense of forgery consists in the false making or altering of a written instrument, to the prejudice of another's rights and the intent to defraud, that in the case at bar the only two questions before the jury are, (1) did the defendant alter the instrument after it was signed by C. W. Grier, and (2) was such alteration (if made by the defendant) done with intent to defraud and that the question of intent need not be inquired into by them unless they first believe from the evidence, beyond a reasonable doubt that the defendant altered the said instrument after it was signed by C. W. Grier, and if the evidence leaves a reasonable doubt in their minds as to whether the said defendant altered the said instrument after it was so signed by the said C. W. Grier, they must find the defendant not guilty."

After refusing said last quoted instruction, the court gave at the instance of the prisoner instructions Nos. 8, 9, 10, 11 and 12, in each of which was embodied the theory of fraudulent making of the order, or fraudulent procurement of the Mayor's signature thereto, which, as shown, is not supported by evidence. This was, in effect, a modification by the court of a proper instruction, such as made it bad. The prisoner was compelled by the court to give instructions different from what he asked for. He had requested a proper one and was compelled by the ruling of the court upon it to give improper ones. So it amounts to an erroneous modification by the court.

For the errors aforesaid, the judgment will be reversed, the verdict set aside, a new trial awarded, and the case remanded for further proceedings according to law and the directions herein given.

*Reversed.*