### UNITED STATES v. MILLER et al.

#### (Circuit Court, S. D. Georgia, E. D. March 20, 1911.)

1. GRAND JURY (§ 8*)—SELECTION—FEDERAL COURTS—JUDGES—DISTRICT JUDGE —JURISDICTION.

Act Cong. June 30, 1879, c. 52, § 2, 21 Stat. 43 (U. S. Comp. St. 1901, p. 624), provides that all jurors for the federal courts shall be publicly drawn from a box in which names shall have been placed by the clerk of the court and a commissioner to be appointed by the judge thereof. Rev. St. § 609 (U. S. Comp. St. 1901, p. 494), declares that Circuit Courts shall be held by the Circuit Justices, or by the Circuit Judge of the circuit, or by the District Judge of the district, sitting alone, or by any two of such judges together. *Held* that, since a District Judge sitting in the Circuit Court has all the powers of a Circuit Judge, a District Judge presiding in the Circuit Court had jurisdiction to appoint a commissioner to select jurors from which a grand jury was to be drawn for such Circuit Court.

[Ed. Note.—For other cases, see Grand Jury, Cent. Dig. §§ 16–20; Dec. Dig. § 8.*]

2. COURTS (§ 352*)—USE OF JURORS—DIFFERENT COURTS.

Jurors drawn by a federal District Judge may be used in the Circuit Court, and vice versa.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 929; Dec. Dig. § 352.*]

Indictment against Harvey C. Miller and another for violating the interstate commerce act as amended. On plea in abatement. Overruled.

See, also, 187 Fed. 375.

Alexander Akerman, Asst. U. S. Atty., and Wm. M. Toomer, John H. Marble, and S. H. Smith, Sp. Asst. U. S. Attys.

Osborne & Lawrence and M. H. Todd, for defendants.

SPEER, District Judge. The defendants, Harvey C. Miller and Morris F. Miller, under indictment for certain alleged violations of the act of Congress to regulate interstate commerce and the acts amendatory thereof, have filed four pleas in abatement. To these pleas the government has presented demurrers, and counsel have been heard. Three of the pleas raise the precise questions as to the validity of the indictments which were presented in the kindred case of United States v. Merchants' & Miners' Transportation Company, 187 Fed. 355, tried at this term. These questions were argued elaborately, and received the attention of the court. The pleas in abatement were disallowed and stricken, and no reason has been presented for a departure for the rulings then made. We must, therefore, sustain the demurrer filed by the government now, to the three identical pleas

---

presented by the defendants, the Millers, and argued by their counsel.

[1] In addition to this, the defendants have filed a fourth plea in abatement of the indictments, now under consideration. This attacks the validity of the order of the court, made April 30, 1910, appointing a jury commissioner to revise the jury boxes for the Eastern division of the Southern district of Georgia. The order is as follows:

In the Circuit Court of the United States for the Eastern Division of the Southern District of Georgia.

In re the Jury Box.

Order Appointing A. S. Anderson, Esq., as Jury Commissioner and for Revision of Jury List.

It appearing to the court that the jury box is in need of revision, it is ordered by the court that A. S. Anderson, Esquire, be and he is hereby appointed jury commissioner, and that he, together with the clerk of this court, proceed, as soon as may be practicable, conformably to law, to revise the jury box of said court, placing therein not less than five hundred and fifty (550) names of persons eligible to jury service from said Eastern division of said Southern district of Georgia in the following proportions, respectively, from the several counties of the district: Chatham county, 75; Effingham county, 37; Screven county, 38; Jenkins county, 37; Emanuel county, 59; Bulloch county, 60; Montgomery county, 37; Tattnall county, 38; Glynn county, 37; Appling county, 19; Liberty county, 19; Bryan county, 18; McIntosh county, 19; Camden county, 18; Wayne county, 19; Tattnall county, 20.

In open court this 30th day of April, 1910.

Emory Speer, United States Judge.

It will be observed that this order was made in term and in open court. The defendants by this plea contend that the District Judge had no power or authority to pass said order, "or to appoint A. S. Anderson or any other person a jury commissioner, and said order and said appointment are without legal sanction, force, or effect."

They further plead:

"That all the authority touching the appointment of the jury commissioners in this honorable court is vested in the Circuit Judge, and not in the District Judge or the Circuit Court, and all the actions of the said the honorable District Judge in the premises were without sanction or authority of law, and all that was done by the said A. S. Anderson and the said clerk was without the sanction or the authority of law."

The objection thus made, if sustained, would have far-reaching consequences. No authority whatever has been produced to indicate that it has been made in the 32 years which have elapsed since the act of Congress of June 30, 1879. It appears, however, from an examination of the minutes of the court, of which we can take judicial cognizance, that in no case since the enactment of the statute aforesaid has there been a revision of the jury box ordered, or a commissioner appointed in this district, by a Circuit Judge solely. On October 18, 1879, such an order was signed by W. B. Woods, Circuit Judge, and John Erskine, who signs "U. S. Judge," but who at that time was judge of the District Court. In December, 1881, a jury commissioner was appointed in term, and therefore, in the Circuit Court, by Don A. Pardee, Circuit Judge, and John Erskine, U. S. Judge.

Since that date, that is to say for the past 30 years, on no occasion in the Southern district of Georgia has the Circuit Judge appointed a jury commissioner. The officials have all been appointed by the District Judge, namely, the judge presiding in this case. In the first appointment, made on October 18, 1879, so great a lawyer and judge as W. B. Woods, Circuit Judge, afterwards Associate Justice of the Supreme Court of the United States, who signs with the District Judge, John Erskine, used the following significant language:

"Ordered by the undersigned judges of the United States Circuit Court for the Southern District of Georgia that William W. Paine, Esq., of the county of Chatham, in said district, be and he is hereby appointed the jury commissioner of said court, pursuant to the provisions of section 2 of an act of Congress approved June 30, 1879."

This order, which has never been questioned or criticised in any manner, except inferentially by the present plea in abatement, is a distinct and most valuable precedent for the settlement of the disputed construction or ambiguity in the statute upon which the defendants by their plea rely.

The statute (section 2) provides:

"That all such jurors, grand and petit, * * * shall be publicly drawn from a box, * * * which names shall have been placed therein by the clerk of such court and a commissioner, to be appointed by the judge thereof. * * * But nothing herein contained shall be construed to prevent any judge from ordering the names to be drawn from the boxes used by the state authorities in selecting jurors in the highest courts of the state," etc.

It appears from the foregoing statement that the order signed by the court for the revision of the jury box, the validity of which order is now in question, has been for more than 30 years the unvarying construction of the statute, not only by the District Judge, but by the Circuit Judge. Surely a jurist as careful and perspicacious as the senior judge of the Circuit Court, who was appointed but two years after the passage of the act in question, would have discovered the vital error in this practice.

In the case of Brown v. United States, 113 U. S. 568, 5 Sup. Ct. 648, 28 L. Ed. 1079, by the Supreme Court of the United States it was held that, in a case of ambiguity in a statute, contemporaneous and uniform executive construction is regarded as decisive. No less a jurist than Mr. Justice Woods, the Circuit Judge who wrote the order which has just been quoted, the first after the passage of the act of June 30, 1879, speaking for the court in that case, quotes with approval the language of the same court in the case of United States v. Moore, 95 U. S. 763, 24 L. Ed. 588:

"The construction given to a statute by those charged with the duty of executing it ought not to be overruled without cogent reason."

See, also, the recent case of New York, N. H. & H. R. Co. v. Interstate Commerce Commission, 200 U. S. 401, 26 Sup. Ct. 272, 50 L. Ed. 515.

This principle is true of the officials of an executive department; but here the duty of executing the statute is intrusted to an official of

the United States or a tribunal who is charged by law with the duty of judicially construing it. A fortiori, therefore, would the practice of the court be regarded as more decisive than that of an executive official. This is especially true where the practice is so uniform, so unbroken, and such an enormous mass of litigation is dependent upon it and has been determined by it. A judicial precedent is of greater weight than an administrative practice in construing a statute.

It is true that a District Judge is not a Circuit Judge; but, as held by Judge Woods and Judge Erskine, in the order quoted, and as appears from the statute, a District Judge is a judge of the Circuit Court.

Section 609 of the Revised Statutes (page 494, U. S. Comp. St.), provides:

"Circuit Courts shall be held by the Circuit Justice, or by the Circuit Judge of the circuit, or by the District Judge of the district sitting alone, or by any two of the said judges sitting together."

Judge Acheson, speaking for the Circuit Court of Appeals for the Third Circuit (McDowell v. Kurtz, 77 Fed. 208, 23 C. C. A. 121), declares:

"When the case was heard below, and the injunction was granted, the District Judge was holding the Circuit Court, under section 609, Rev. St.; and his authority was coextensive with that of any other judge sitting in the same court [citing authorities]. Therefore his action in granting the injunction had the same force and effect as if the court had been held by the Circuit Justice, or a Circuit Judge, or by a full bench."

In the case of Goodyear Dental Vulcanite Co. v. Folsom (C. C.) 3 Fed. 509, it was held by Judge Lowell, then Circuit Judge, that the Circuit Court could issue a writ of injunction, when held by the District Judge, as fully and freely in all respects as when held by the Circuit Justice or Judge, or by two justices.

In the case of United States v. Hanson (C. C.) 28 Fed. 75, it was held at circuit by Justice Gray, of the Supreme Court:

"The order of the Circuit Court, of January 18, 1884, in the same terms as the order of the District Court of the same date * * * is signed by the District Judge only; and it is contended, on the authority of Amis v. Smith, 16 Pet. 303 [10 L. Ed. 973], that a rule of the Circuit Court made by the District Judge alone, is of no validity. It is a sufficient answer to this objection that by the terms of Act June 30, 1879, § 2, 'any judge' is authorized to order the names of jurors to be drawn from the boxes used by the state authorities. Challenge adjudged bad."

This ruling was made upon a plea in abatement not altogether dissimilar to this. There is no reason why the Circuit Judge should have the exclusive power to appoint the jury commissioner, when the District Judge is the judge of the Circuit Court, and when a Justice of the Supreme Court holds that "any judge" is authorized to order the names of jurors to be drawn from the box used by the state authorities. This is in effect equivalent to authority to any judge to appoint jury commissioners of the state courts as jury commissioners of the Circuit or District Courts of the United States. There is no difference in principle between the appointment of such commissioners

by the adoption of the jurors they have put in the state court box, and an order by the District Judge appointing a commissioner to make or revise a jury box in his own court.

In United States, Petitioner, 194 U. S. 194, 24 Sup. Ct. 629, 48 L. Ed. 931, it was held by the Supreme Court:

"The words 'court' and 'judge' have frequently been used interchangeably in federal statutes, and this court adheres to the construction it has heretofore recognized as correct, and which has been adopted generally in practice, and in congressional legislation, that the appeal from a United States commissioner provided for in section 13 of the act of September 13, 1888 (25 Stat. 476, 479 [U. S. Comp. St. 1901, pp. 1312, 1317]) is an appeal to the District Court, and should be so regarded."

There the appeal was directed to a District Judge, and the court, in substance, holds that in such connection, where the words are used interchangeably, that they are convertible; that is to say, they mean the same thing. In one clause of the statute under consideration, the reference is to "the judge thereof," and in another sentence it says "any judge," meaning, of course, any judge of the Circuit or District Courts, may perform this duty.

Besides, the evolution of the Circuit Courts has made the construction contended for by the government's counsel inevitable. There are three Circuit Judges now. If, as insisted by the defendants, the commissioner must be appointed by the Circuit Judge, how is it possible to determine which is the Circuit Judge referred to by the statute. If the defendants are right, in this circuit Judge McCormick or Judge Shelby have the same powers as Judge Pardee, except, of course, in those cases where seniority of appointment and consequent rank control. Who, then, is the Circuit Judge for this particular duty?

Then, too, the construction contended for would seem to be impossible. We have in the Fifth circuit all the Gulf states, from Florida to Texas, inclusive, and Georgia as well. There are 15 judicial districts and 52 divisions of such districts. It would be an unnatural construction to make the Circuit Judges, who are chargeable with the grave duties of the appellate courts, responsible for such a duty in all these divisions as would properly belong to the judge of the local division. At the time the act of 1879 was passed, the Circuit Court of Appeals was not in existence. There was but one Circuit Judge for the six states. Nor had the enactment which authorizes the juries of the Circuit and District Court to be used interchangeably been made. That (Act Aug. 8, 1888, 25 Stat. 386 [U. S. Comp. St. 1901, p. 624]) provides:

"Whenever any Circuit and District Court of the United States shall be held at the same time and place they shall be authorized and required, if the business of the courts will permit, to use interchangeably the juries in either court drawn according to the provisions of said act."

[2] Since the jurors drawn by the District Judge may be used in the Circuit Court, and the jurors of the Circuit Court may be used in the District Court, there is, of course, no reason why the judges

of either court may not perform the simple duty of designating a jury commissioner. Certainly this duty has been performed by a de facto judge. The manner in which the statute has been construed, where no prejudice is alleged to a defendant, is made clearly apparent by the ruling of Judge Pardee, in the case of United States v. Chaires (C. C.) 40 Fed. 820. In that case the learned Circuit Judge declares:

"The duty to be performed by these parties is clearly and specifically prescribed in the statute. It may be considered, and probably is, mandatory; but it is entirely distinct from the duty devolving, under the statute, upon the judge. The plea under consideration relates entirely to the performance of the duty of the judge. * * * The judge, in the exercise of a sound discretion, under the responsibilities of his office, directed as the statute, passes upon the qualifications of the jury commissioner he appoints, and his action would seem to be final and conclusive, except, perhaps, in the court that can call the judge to account for misbehavior in office. Particularly must this be the case where neither injury nor prejudice nor oppression is apparent nor is averred."

In the recent case of Ex parte Harlan (C. C., 5th Circuit) 180 Fed. on page 127, District Judge Jones declares:

"When the Circuit Court is in session. it necessarily makes the order to draw the grand jury to attend its sitting. At other times, the order is properly made by any 'one of the judges of such Circuit Court' in his discretion. Rev. St. § 810 [U. S. Comp. St. 1901, p. 627]. Under our statutes, whatever may have been the case at common law (Curtis v. Commonwealth, 87 Va. 589, 13 S. E. 73), the making of an order for the drawing and attendance of a grand jury is the exercise of judicial power; but the power pertains to the judge, as well as to the court. Such an order does not determine anything with reference to adversary proceeding in the court, or conclude public or private rights in any way, and amounts to nothing more than a mere administrative regulation of internal affairs relating to the organization of the court. There is nothing in the nature of the order which calls for the presence of the judge when the court officers execute its command. So long as the order is made by the proper authority, its source, whether the court, or one of its judges, is of no concern to the defendant, who is afterwards indicted by the grand jury."

Surely an error so fundamental as that attributed to the court by this plea would have been discovered somewhere by some of the judges or some of the counsel in the 9 circuits, in the 74 districts, and in the multitude of the divisions of such districts which have been marked out by law, throughout. the United States, and in some one of the vast variety of civil or criminal cases, the most important disposed of by the courts for the past generation.

When we reflect that the assiduity of counsel has not enabled them to produce a single precedent in support of their contentions, it is persuasive that their contentions are not so well founded as they usually are. This is, of course, not a conclusive consideration, but it is gravely significant.

On the whole, estimating the argument for the plea as closely and carefully as we can, we do not regard it as sufficient to overturn the construction universally placed upon the act by so many courts and for so long a time, especially as nothing actually prejudicial to the defendant is alleged in the plea.

The contention of the government that the plea is filed too late is, of course, in the record; but this court prefers to place its rulings upon the less technical point upon which it relies.

The plea in abatement must be overruled and denied.