**KRAMER, Petitioner, v. ALVIS, Warden, Respondent.**

Ohio Appeals, Second District, Franklin County.

No. 5400. Decided April 12, 1956.

Brownfield & Malone, Lyman Brownfield, of Counsel, Columbus. for petitioner.

C. William O'Neill, Atty. Genl., John W. Shoemaker, Asst. Atty. Genl., Columbus, for respondent.

(FESS, J, of the Sixth District, sitting by designation in the Second District.)

## OPINION
By HORNBECK, J.

This is an appeal from a judgment of the Common Pleas Court granting a Writ of Habeas Corpus to petitioner on the ground that "in the trial of petitioner's case he was effectively deprived of the right of counsel within the meaning and spirit of **Art. I, Section 10, Ohio Constitution** and the Fourteenth Amendment of the Constitution of the United States of America."

Petitioner was indicted in October, 1951, on four counts of breaking and entering an inhabited dwelling in the night season of September 15, 1951. On December 14, 1951, having theretofore been arraigned and entered a plea of not guilty, was tried, convicted and sentenced on three of the four counts of the indictment. In his trial he was represented by two counsel, Mr. Martin Burnham, who was appointed by the court to defend, and Mr. Orville Wear, who, by the consent of the court, assisted Mr. Burnham. We will state more of the pertinent facts later in this opinion.

Appellant assigns three errors:

1. The trial court erred in not holding that habeas corpus was not the proper remedy.

2. The court erred in holding that the petitioner was deprived of his right of counsel within the meaning of **Art. I, Section 10, Ohio Constitution.**

3. In holding that the petitioner was effectively deprived of his right to counsel within the meaning and spirit of the Fourteenth Amendment of the Constitution of the United States.

The first assignment must be resolved in favor of the appellant upon the authority of **Beard v. Alvis, Warden, 164 Oh St 488,** Ohio Bar, February 6, 1956. (Cf. **McConnaughy v. Alvis, 165 Oh St 102,** Ohio Bar, March 26, 1956.) The facts in this case so nearly parallel those in the instant case as to make it a compelling and decisive authority. There are, of course, many other decisions of our Supreme Court to like effect, viz.: that in Ohio, in a habeas corpus proceeding the question for determination is whether or not the trial judge who sentenced the prisoner had jurisdiction of the subject matter and of the person of the prisoner. If so, habeas corpus may not be invoked.

As we are required to pass upon all errors assigned, we consider the second and third assignments. Without the slightest hesitation, we could hold that the finding of the trial court that due process was not

accorded petitioner under either State of Federal Constitution is manifestly against the weight of the evidence. Because we reach the conclusion that there is no substantial evidence to support the finding as to the second and third assignments, we examine and discuss the factual developments more at length.

This is the third time that the petitioner has been before this court in habeas corpus proceedings.

On September 29, 1952, upon petitioner's hearing, conforming to our practice, we took his testimony and permitted him to state, in his own words, any and all facts upon which he based his claim for release on habeas corpus. Later, on the fourteenth day of October, 1952, we handed down a written opinion in which we stated, in part:

"At the conclusion of petitioner's statement, the court said to him that no fact appeared which suggested that he had been denied any right which went to the jurisdiction of the court to hear and try him. However, upon request of counsel that we consider his brief we informed him that we would do so and we have. The brief is made up of eight numbered arguments setting forth the acts and conduct of the officers of the court from the time prisoner was arraigned until he was convicted and sentenced.

"Giving full weight to the facts which petitioner states as true and according to them all the legal implications favorable to him they constitute, at best, nothing more than certain irregularities which, if prejudicial to him, could be reached by a motion for new trial and are not of sufficient import to constitute a denial of any constitutional right."

The identical question presented in this case in the trial court was urged and briefed in the habeas corpus proceeding above by question No. 4 in relator's written brief.

The second time that we had petitioner's habeas corpus proceeding before us was on an appeal from the Common Pleas Court of Franklin County wherein he had been released, notwithstanding our judgment in the former case, upon the finding that he was being held under a void sentence. In this proceeding, we were in accord with the theory of the trial judge that if the verdict was void because so ambiguous as to be unintelligible, the petitioner could not be legally committed on such a verdict. We differed with the trial judge on the validity of the verdict and were of the opinion that a full consideration of its terms indicated that it responded to the three counts of the indictment and that the verdict as returned, as it related to the so-called included offenses, was surplusage. On petitioner's appeal to the Supreme Court no consideration was given to the question which had been considered and discussed at considerable length in the lower courts. The Supreme Court held that the verdict, as returned, presented only the issue of its irregularity or validity which could have been determined upon appeal, and that habeas corpus was not the proper procedure. **In re Kramer: Kramer v. Alvis, Warden, 163 Oh St 510.**

The pertinent part of **Article I, Section 10, Ohio Constitution,** reads:

"In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel."

The pertinent part of the Fourteenth Amendment, Section 1, is:

"* * * nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the law."

The Sixth Amendment to the Federal Constitution is more like **Article I, Section 10, Ohio Constitution** and has more application to the facts developed here than the Fourteenth Amendment, heretofore quoted. It reads, in so far as pertinent:

"In all criminal prosecutions the accused shall have the right * * * to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Counsel for petitioner concedes that the basis for his action has not been favored by the Ohio courts but that the decisions of the Federal courts support his contention.

In all of the cases cited by petitioner intended to establish that in the Federal Courts, if an accused was unrepresented by counsel at the trial and denied his Constitutional rights under the Federal Constitution, the State Courts have no power to deny him freedom because of a narrow local interpretation of the Writ of Habeas Corpus, there is a second vital factor involved. It is, that the accused has been denied, by failure of representation of counsel, a fair trial and that there has not been a proper administration of justice. We call attention to some of the facts in these cases, in but one of which did the accused have any counsel to represent him.

Brown v. Mississippi, 297 U. S. 278, 56 S. Ct. 461, the Court in the opinion said:

"Further details of the brutal treatment to which these helpless prisoners were subjected need not be pursued. It is sufficient to say that in pertinent respects the transcript reads more like pages torn from some medieval account than a record made within the confines of a modern civilization which aspires to an enlightened constitutional government."

"Complaint is not of commission of mere error, but of a wrong so fundamental that it made the whole proceeding a mere pretense of a trial and rendered the conviction and sentence wholly void."

As we read this case although the third syllabus is: "State may not deny to accused aid of counsel," it is said in the opinion "we are not concerned with a mere question of state practice, or whether counsel assigned to petitioners were competent or mistakenly assumed that their first objection (to the admission of the confession) was sufficient." The case was decided on certiorari from a conviction of petitioners and upon the ground that the use of a confession obtained by coercion, brutality, and violence as basis for conviction and sentence constitute a denial of due process.

Smith v. O'Grady, 312 U. S. 329, 61 S. Ct. 572, was likewise heard on a Writ of Certiorari but from the refusal of the Nebraska State Courts to grant petitioner's application for a Writ of Habeas Corpus. The facts sufficiently appear in the third syllabus:

"Allegations that petitioner had been denied any real notice of true

nature of charge against him, that because of deception by Nebraska representatives he had pleaded guilty to a charge punishable by 20 years to life imprisonment, that his request for benefit of counsel had been denied by the court, and that he had been rushed to the penitentiary where his ignorance, confinement, and poverty had precluded the possibility of securing counsel to challenge the procedure by regular processes of appeal, stated a cause of action entitling petitioner to habeas corpus, since, if true, allegations showed a denial of 'due process of law.' "

The question presented to the court is epitomized in the opinion:

"Heart of the charge is that petitioner was an ignorant layman not represented by counsel, was tricked into pleading guilty to a serious offense."

House v. Mayo, 324 U. S. 42, 65 S. Ct. 517, the accused was without warning and over his protest, forced to plead to an information without aid and advice of counsel previously retained by accused whose presence accused requested. Held, denial of constitutional rights to aid in assistance of counsel.

Rice v. Olsen, 324 U. S. 786, 65 S. Ct. 989, accused had no counsel. Held, third syllabus:

"Defendant charged with burglary incapable adequately of making his defense, unable to get counsel and does not intelligently and understandingly waive counsel, suffices to show that the court, consistently with due process, should appoint counsel for him, whether requested or not, and the defendant pleads guilty, he is entitled to benefit of counsel."

DeMeeler v. Michigan, 329 U. S. 663, 67 S. Ct. 596, held that:

"Proceedings in State Court by which 17-year-old boy was arraigned, tried, convicted on plea of guilty, and sentenced to life imprisonment for first degree murder, all in the same day and without assistance of counsel or advice as to rights of counsel, without explanation of consequences of plea of guilty and without evidence in his behalf or cross-examination of state's witnesses, constitute a denial of due process of law."

Townsend v. Burke, 334 U. S. 736, 68 S. Ct. 1252, fourth syllabus:

"Absence of counsel when aggravated by circumstances showing that it resulted in prisoner actually being taken advantage of, is prejudicial and violates 'due process.' "

Coming to the specific claim made in this case, petitioner cites Williams v. State, 192 Ga. 247:

"If appointed attorneys are so ignorant, negligent or unfaithful that the accused was virtually unrepresented, or did not in any real or substantial sense have the aid of counsel, he would be deprived of a fundamental constitutional right, and if convicted might successfully complain that he had been denied due process of law."

The court in that case held against the contention of the petitioner.

The annotator in 146 A. L. R. 369 at page 419, after setting forth that the elements heretofore stated in the quotation from Williams v. State, if appearing, are grounds for relief in habeas corpus, after judgment of guilt or sentence added the proviso that the petitioner satisfy

certain other conditions which are, among others, that it must appear that the accused has been prejudiced by the action of such counsel.

The cases cited by respondent in the Federal Courts are in accord with the rationale of the foregoing quoted cases and the opinion of the annotator.

How, then, do the facts in the trial of this case reach up to the requirements essential to the finding of a violation of petitioner's rights under either State or Federal Constitution? It, of course, is not and could not be claimed that the petitioner was not represented by counsel. He had not one but two. But it is contended that petitioner was so inadequately and incompetently represented as to be the equivalent of a denial of representation by any counsel and that his defense was a sham.

It appears that petitioner, at about 9 o'clock at night on the 15th of September, 1951, was observed by police officers of the City of Spring-field, in the yard of a residence which was unlighted. Upon being accosted, petitioner stated that he was looking for a person of the same name as his who lived at a number which was not found in the block where he was apprehended. One of the officers requesting identification examined a wallet in the possession of petitioner and at the same time observed another wallet in his trousers pocket. An examination of this second wallet disclosed certain contents afterwards proven to belong to the occupant of one of the houses found to have been burglarized. Upon inquiry, it was learned that petitioner's automobile was parked a short distance from where he had been apprehended and when they reached his car, his wife was seated therein, the officers then and thereafter found, on the person of petitioner and in a trunk in his car, numerous articles which had been stolen from the three residences described in the indictment. Much of the property found in petitioner's car was identified as the property of the three persons whose residences it was claimed had been burglarized. On the way to the police station, one of the officers observed a screw driver, which had been in a pocket of the petitioner, which thereafter it was testified by an expert, was, in his opinion, the instrument that had been used to effect an entrance into the burglarized places.

Soon after petitioner was indicted, Mr. Burnham called upon him and told him that a friend of his had requested that Mr. Burnham come to see him. Thereafter, Mr. Burnham was engaged as petitioner's counsel, he having turned over to Mr. Burnham all the money except $20.00 which had been taken from him by the officers. Petitioner insists the total amount he had when arrested was about $700.00. He testified that Mr. Burnham said of this he got but $200.00. Officer Stoltz testified that petitioner told him the night of his arrest that he had less than $140.00 on him. The exact amount could easily have been determined by the testimony of the prosecuting attorney to whom it was said the money had been turned over. Mr. Burnham conferred with petitioner several times in the jail succeeding his employment in October and it is claimed that he did not indicate a purpose to quit his employment until December 13th, the day before the trial.

Mr. Burnham at the time of the trial in the habeas corpus action was in Texas, having moved there, and did not testify. Mr. Orville Wear was called upon by Mr. Burnham to assist him in the preparation of the trial. The formal entry naming Mr. Burnham as counsel is dated December 13, 1951, but one day before the trial. However, Mr. Wear said that the court had indicated a purpose to appoint Mr. Burnham at least a week before the trial and also approved the association of Mr. Wear with him and that he had conferred with petitioner, with Mr. Burnham, several times and three times with the Prosecutor, prior to the trial. Mr. Wear testifies that petitioner would not talk to his counsel respecting his whereabouts on the 15th of September although he had at all times insisted upon his innocence.

It appears, and it is not denied, that Mr. Burnham had been in the general practice of the law for about fifteen years, that he had served as Municipal Prosecutor in charge of criminal cases. Mr. Wear had been in the practice for twenty-three years, had served as acting Municipal Judge, five years as Prosecuting Attorney of Clark County, had handled trials in a thousand misdemeanors and had participated in two hundred cases where the charges were felonies. Petitioner says that he and Burnham had difficulty which became quite heated when he indicated a day before trial a purpose to withdraw from the case, and that he and his wife objected to the court to his appointment.

Counsel for petitioner in his brief sets up thirteen particulars wherein he charges that the petitioner was not competently represented. We discuss some of them together with some further developments in the trial.

The fourth particular is that neither Burnham nor Wear attempted to prevent the introduction into evidence of a list of articles which were found on petitioner when arrested. This is not accurate because it does appear that objection was interposed to the admission of these articles but the objection was not pressed (p. 65 of the record).

Five, neither Burnham nor Wear made any independent investigation, except to examine a complaint sheet, and Six, did not attempt to substantiate petitioner's story that he had not stolen any of the articles with which he was apprehended. The petitioner did not tell his story to the jury but not only at his trial but in all of his subsequent proceedings the outstanding weakness in his case has been his failure or inability to suggest the identity of any witness, by name, description or location who would have any information of value to him on any material element of his defense. Mr. Wear testifies that neither he nor Mr. Burnham could elicit any information from their client which would assist them in accounting for his possession of the stolen property except the story told by his wife to the jury.

Seven, neither counsel attempted to prevent the introduction into evidence of the ownership of the car which petitioner had been driving at the time of his arrest. Objection was interposed to the admission of this testimony which was overruled (p. 28, record). It developed, that in a conversation with petitioner he told the officer that the car he was driving when apprehended was stolen as were the license plates on it.

Eight, neither counsel investigated the possibility that another person than petitioner might have committed the crimes for which he had been indicted inasmuch as it appeared that one of the counts in the indictment charged the commission of a crime which had occurred six days after the petitioner had been arrested and was in jail. That they did not even attempt to press this point at trial. It is not correct to say that they did not attempt to press this point at the trial. It was developed, by Mr. Burnham, in the cross-examination of Officer Miller (p. 40, record) that the burglary charged in the fourth count was committed while petitioner was in jail.

Counsel did not investigate the identity of the person who might have committed the crime charged in the fourth count of the indictment. It is obvious that they had little or no information upon which they could proceed to investigate this question.

Nine and Ten are directed to the failure of counsel to object to the court's instructions to the jury that daytime breaking and entering was an included offense of burglary in the night season and in failing to object to the form of verdict submitted to the jury.

Of course, the contention may be made now that counsel did not use the best judgment respecting the charge and the form of a verdict, but that is not the test. What of their judgment at the time of trial? If the view of this court is correct as to the effect of the inclusion of burglary in the daytime as an included offense of the charges against defendant in the instructions of the court and in the verdict submitted, counsel took the course that, at the time, might have been most favorable to their client. If burglary in the daytime was an included offense of the charges in the indictment, a conviction of such an offense may have been beneficial to the defendant and would have resulted in a lighter sentence. If burglary in the daytime was not an included offense, then counsel acted in the interest of their client in permitting the court to present a verdict which permitted a conviction of the offense of burglary in the daytime. Had the jury returned such a verdict, it would, in our judgment, have required, at least, the granting of a motion for a new trial.

Eleventh and Twelfth are to the effect that notwithstanding blatant errors, heretofore pointed out by counsel, and the fact that had Burnham or Wear made the slightest research they would have ascertained that the court was without power to charge the jury as to daytime breaking and entering or to submit to the jury a form containing counts charging that crime.

The question as to the correctness of the inclusion of daytime burglary in the charge and in the form of the verdict presented to the jury is not so simple, as stated by counsel. The trial judge, a long experienced jurist, the prosecutor, counsel for the defendant at the trial, the Common Pleas judge who heard the first habeas corpus case, and counsel for the petitioner in that case, in this court and in the Supreme Court, took the view that burglary in the daytime is an included offense of burglary in the night season. It is therefore hardly fair to counsel for the petitioner in his trial, to charge gross incompetence because

they did not at the time of trial, or soon thereafter anticipate the view of this court as to the law of the included offenses.

Thirteen, "Burnham emphasized to the jury that he was appointed counsel in the case thus implying that he was not to be blamed for his client's shortcomings."

When we read these statements of counsel made during the trial and argument, we were impressed that they might have been objectionable, not for the reasons suggested by petitioner, but because they might have tended to create sympathy for the defendant in that he was indigent, unable to employ his own counsel and had to depend upon appointed counsel.

It is also urged that the fact that Mr. Burnham and petitioner had quarreled prior to Burnham's appointment as counsel and withdrew but a short time before his appointment disclose his unfitness to represent petitioner, especially as petitioner objected to Burnham's appointment. There is nothing whatever in the record to indicate that Mr. Burnham, by reason of his differences with the petitioner, failed to give to him the best service of which he was capable. There are some Federal cases that hold that under the U. S. Constitution an accused should have the benefit of counsel of his own choosing. This certainly would not have application to prevent the trial judge naming an attorney, under the statute, to represent a defendant who was indigent although such attorney was not the choice of the defendant. Here Mr. Burnham was, in all probability, best qualified of any available member of the Bar to capably represent the petitioner because of his months of contact with the petitioner and his knowledge of his case, a situation known and appreciated by the trial judge when he made the appointment even over the protest of petitioner.

Petitioner, in his testimony objects that although he gave his counsel leads, they did not get witnesses in his behalf. After years of opportunity of petitioner and his able counsel to produce witnesses there has been at no time a suggestion of any individual who could have brought into the trial of his case any favorable fact, not produced at his trial, material to his defense. It could not be expected that the man whom the petitioner told the officers had the suitcase containing the stolen property and left it in a lot, if true, could be found and produced at the trial. The petitioner had no alibi, he was apprehended at or near the scene of the burglaries soon after they had been committed. The stolen property was found on his person or in his car. He had been in Clark County only a very short time prior to the commission of the alleged offenses.

We are unable to follow the contention of petitioner that further effort on the part of his counsel could have produced any evidence in his behalf other than that which was offered in the trial unless he himself had taken the stand. He says that counsel advised against him testifying because of a former criminal record. The nature and extent of this former criminal record has not been at any time divulged. Mr. Wear says that the petitioner elected not to testify. However that may be, upon any fact developed in any of the proceedings the failure to compel petitioner to testify cannot be attributed to any incompetence

of counsel. Notwithstanding the failure of petitioner to testify, his wife was put on the stand and testified to the story that petitioner told for the first time two days after his arrest. She said:

"We had parked there and noticed a man coming down the other side of the street toward us. He was carrying a suit case and he went in a lot across the street from where we were sitting and came right back out and he didn't have the suit case. He goes back down the street the way he came in. In a few minutes he come back with something in his hands and my husband said 'I wonder what he is up to.' I said 'I don't know.' he went in there and came back and went down the street the same way he came before."

"Q. Did your husband do anything about this particular suit case? A. Yes. He started the car up. He drove down in the next block from where we were parked, straight down the street and he parked and got out and says 'Something funny is going on. I will be back in a few minutes.' He came back with the suit case. Put it in the trunk. He got in the car and drove down around the corner again and got out and left and that is when the police got me."

It is asserted and argued that the defense made by petitioner's counsel was a sham. This is a serious charge involving not only capability and judgment of counsel but their professional integrity and good faith in presenting petitioner's defense. Such a charge should not be made again any member of the Bar unless and until there is competent, reliable testimony to support it. There is not the slightest support for this contention.

What of the conduct of counsel in the trial of petitioner's case? It is evident that counsel was confronted with a difficult defense. Mr. Wear in his deposition says that in the preparation of the case he asked the petitioner all the questions you would ask a defendant you were trying to defend. That petitioner was not cooperative, which fact had been conveyed to him by Mr. Burnham. Mr. Wear says that he told petitioner that he did not believe anybody would believe his story as to how he came into possession of the stolen goods.

Mr. Burnham, in his opening statement to the jury said that he expected the evidence to develop that defendant was not guilty of the charges against him. Every witness offered by the state was cross-examined. The principal issuable question upon the testimony of the State was the time when the burglaries were committed, whether in the day or in the night season. Counsel realized this and developed and stressed the fact on cross-examination. They also undertook to weaken the testimony of the State respecting the possession of the screw driver by the defendant when he was being transported to the jail. They objected to the introduction in evidence of the articles other than those identified as having been stolen from the burglarized premises, found in the car of defendant immediately after he was apprehended and later in his cabin. We cannot tell from the record whether or not articles other than those claimed to have been stolen from the burglarized premises were offered and admitted as exhibits It certainly is not clear that the testimony respecting the articles found in the car was not admissible and, inasmuch as the court had admitted it,

counsel used good judgment in not emphasizing too strongly their objections. It is doubtful if the articles found in the cabin were admissible. Counsel for petitioner developed the obvious mistake of the State in the charge made in the fourth count of the indictment. They elicited from one witness the fact that there was an open door in one of the residences claimed to have been burglarized through which, without breaking, entrance could have been effected.

Objection is urged to the suggestion of counsel that petitioner pleaded guilty to one of the counts of the indictment. In the light of the verdict and sentence and its effect on the probation of petitioner who is to say that the advice was not sound?

It is also urged that it was grievous incompetency for Mr. Wear to devote most of his argument to the contention that the evidence established only a burglary in the daytime. Good lawyers might well differ as to this strategy. Mr. Wear was widely experienced with jurors and said, in substance, that he did not want to urge upon them something which he thought they would not believe and thereby lose the effect of a contention which they might well accept under the testimony.

The experience of courts, such as ours, which have had extended experience in hearing habeas corpus cases is well reflected in the opinion of Diggs v. Welch, 148 F. 2d, 667, 669. The writer of the opinion was discussing the proper interpretation of "effective" representation by counsel, under the Constitutional provision that a defendant has the right to assistance by counsel. He said:

"We are aware if that word be construed in a broad and liberal sense, it would follow that on habeas corpus the court would have to review the entire trial and consider all the alleged mistakes, failures to object to the introduction of evidence and errors in advice which the ingenuity of a convict could set down on paper during the enforced leisure of his confinement. * * *

"The result of such an interpretation would be to give any Federal prisoner a hearing after his conviction in order to air his charges against the attorney who formerly represented him.

"To allow a prisoner to try the issue of the effectiveness of his counsel under liberal definition of that phrase is to give every convict the privilege of opening a Pandora's box of accusations which trial courts near large penal institutions would be compelled to hear.

"Few trials are free from mistakes of counsel. How much these mistakes contribute to the result can never be measured."

We have always indulged the presumption that any lawyer who has been admitted by our Supreme Court to practice law is qualified to defend a client against a criminal prosecution. Unless it clearly appear that he is so incompetent, or conducted a defense so negligently and so incapably as to have denied his client the benefit of a fair trial and judicial determination, it may not be said that his client was denied the assistance of counsel or due process of law as contemplated by our Constitution.

We could and probably should have restricted this opinion to the short written decision in the first habeas corpus case heard in this court, which we have heretofore quoted. However, inasmuch as peti-

tioner is serving a sentence of great severity, and inasmuch as two Common Pleas Court judges for whose ability we have high regard have held that the petitioner should be released from the penitentiary upon his sentence of guilt of the three offenses of burglary in the night season, and in simple justice to the attorneys whose professional reputations have been assailed, we have carefully searched the record and considered the contention of counsel at great length. In discussing the respective arguments of counsel we do not mean to hold that they would be of no merit whatever in an error proceeding, but to show that in almost every instance they are susceptible of different interpretations

Giving to the pleadings and all of the testimony in behalf of the petitioner the most favorable interpretation for him, we are convinced, that he did not state a cause of action of habeas corpus in his petition, that he had no basis in law for such an action, that he has offered no substantial evidence that his constitutional rights have been infringed in the specific instances asserted or under the Fifth or the Sixth Amendment of the United States Constitution, that his claim that his defense in his trial was a sham is utterly unsupported and that the second and third assignments of errors, as well as the first. are well made. It is clear that the propositions here urged, if supported, present nothing more than irregularities which should have been raised by error proceedings. As a matter of law the judgment in the Common Pleas Court should have been for the respondent.

All assignments of error being well made, the court will render the judgment here which should have been rendered in the trial court.

Judgment for respondent, petition dismissed and cause remanded.

MILLER, PJ, FESS, J, concur.