STATE OF WEST VIRGINIA

*v.*

LOUIS RISK

(No. 10599)

Submitted January 20, 1954.     Decided March 2, 1954.

D. *Boone Dawson, Charles Ritchie,* for plaintiff in error.

*John G. Fox,* Attorney General, *Harold A. Bangert, Jr.,* Assistant Attorney General, for defendant in error.

BROWNING, Judge:

At a special term, June, 1952, of the Intermediate Court of Kanawha County, West Virginia, an indictment was returned against the defendant, Louis Risk, charging: (1) That the defendant by force and intimidation prevented one P. Wells, who was then and there a commissioner of election, from discharging his duties as such commissioner of election; and (2) that the defendant by force and intimidation attempted to prevent P. Wells, who was then and there a commissioner of election, from discharging his duties as such commissioner of election.

The defendant moved to quash the indictment on the ground that a sufficient number of qualified jurors did not attend to constitute a competent grand jury, whereupon the court appointed one "bona fide citizen" and one jury commissioner to select additional jurors, contrary to the provisions of 52-2-4 of the Code, which requires the appointment of two bona fide citizens in such instance. The motion to quash the indictment was overruled, and defendant then moved to quash the venire of petit jurors on the ground that a legal venire had been duly summoned and attended the court from September 24, 1952 until October 31, 1952, at which time they were discharged by the court, even though there were numerous cases pending for trial, and a new venire summoned to act in their stead which constituted an illegal and void venire of jurors. This motion was likewise overruled, and defendant then demurred to the indictment as void and insufficient in law because it: (1) Did not specify the character of conduct relied upon; (2) did not fully and plainly inform defendant of exact nature of charge against him; and (3) did not describe the offense with reasonable certainty to bar a subsequent prosecution. The court overruled the demurrer, the case proceeded to trial, and the jury found the defendant guilty as charged in the second count of the indictment.

Judgment was entered on the verdict on April 3, 1953, and defendant was sentenced to one years imprisonment, to which this Court granted a writ of error on June 15, 1953.

The four republican election officials selected to serve at the primary election of May 13, 1952, at Kanawha County Precinct No. 109, were Fred Hammack, W. W. Jarrett, Israel Simon and Joseph Matz. No report was ever received by the Chairman of the County Republican Executive Committee that any of these selectees had declined to serve, nor was any request made to the county court to appoint a substitute. On Friday, May 9, 1952, P. Wells received a call from the republican ward committeeman who requested that he serve at Precinct No. 109

on the following Tuesday. He agreed, and on Saturday morning, the committeeman delivered to him a notice or certificate of appointment as republican counting commissioner, signed by the members of the county court, and which was subsequently introduced in evidence as "State's Exhibit No. 1."

The persons selected to conduct the election at Precinct No. 109 arrived at that precinct between 6:00 and 6:15 A. M. Two republican members of the counting board having failed to arrive, two outside workers were called in and both the receiving and counting boards were sworn at that time. Wells arrived at the precinct around 6:30 A. M., laid his certificate of appointment on the table before a Mr. Edens, and was informed by someone that he was too late. At that time a scuffle ensued between the defendant Risk and an election official, whereupon the defendant said, in effect, that if he had to leave, he would take Wells with him. The defendant then bodily ejected Wells from the building.

Wells returned around 7:00 A. M. with a police officer, was sworn, and immediately thereafter went to his office, but returned to the polling place about 10:00 or 10:30 A. M., at which time he and Sam Wilan, who in the meantime had been installed as republican counting clerk, counted twelve or thirteen ballots, and again returned to his office where he remained until 12:00 or 12:30 o'clock. Wells testified that he again returned to the polling place, and that he and Wilan counted about fifteen more ballots, whereupon Wells informed the other election officials that he was ill, and was going home to "lay down and if you need me later, call me and I will come down". Wells attributed his illness to a pain in the side received in the encounter with the defendant earlier in the day. Wells says that he did not again return to the polling place until about 10:00 or 10:30 that night when he received a telephone call asking him to return to the polling place, which he did, and upon signing certain papers which were handed to him, he left and did not return again.

Code, 52-2-4, provides the method to be followed by a

trial court to fill out a grand jury when a sufficient number of jurors drawn by the regular jury commissioners are not in attendance. That section reads as follows: "Any fifteen or more of the grand jurors attending shall be a competent grand jury. If a sufficient number of qualified jurors do not attend, the court shall appoint two bona fide citizens of the county, of opposite politics, having all of the qualifications of jury commissioners, who, after taking the oath required of jury commissioners, shall select the number of qualified persons necessary to complete the grand jury, for which services the person so appointed shall be allowed the sum of two dollars each, to be certified by the court to the county court for payment."

The defendant contends that Robert Hawkins, one of the regular jury commissioners of Kanawha County, who was appointed by the court to select additional jurors to complete the grand jury, was ineligible for such service because of the fact that he was one of the regular jury commissioners. It is not contended that he did not have all of the other qualifications required by Code, 52-2-4. This section excludes no "bona fide citizen of the county * * * having all of the qualifications of jury commissioners" from serving as a special jury commissioner. It would be difficult to find a citizen to serve in this capacity with better qualifications therefor than a regular jury commissioner. This Court held in *State* v. *Martin,* 38 W. Va. 568, 18 S. E. 748, that in the absence of a statutory restriction, a regular jury commissioner is eligible to serve on a grand jury. There is no merit in the contention that the special jury commissioners were not qualified or that the defendant was prejudiced in any way by the manner in which the additional grand jurors were selected. The motion to quash the indictment was properly overruled.

The defendant's motion to quash the venire of petit jurors was based upon the contention that while the trial court may, under the provisions of Code, 52-1-15, in term time cause additional petit jurors to be drawn and summoned if the necessity arises therefor, that such court

does not have the authority under that section, or otherwise, to discharge the entire venire and summon a new one during term time.

Code, 52-1-15, reads as follows: "Nothing contained in the preceding sections shall prevent any court, in term time, from requiring other jurors to be drawn by the clerk, in the presence of the court, and to be summoned whenever it shall be found necessary for the convenient dispatch of business. But in such case, the list prepared by the jury commissioners under section four of this article shall be exhausted before another list is made. The jurors so summoned shall be required to attend on such days as the court shall direct."

The record shows that the reason for the discharge of all jurors then in attendance and the selection of additional jurors was that the original venire of jurors had been in attendance at trials from September 24 until October 31; that by virtue of many jurors having been excused, the venire was reduced to a point where the business of the court could not be transacted; and the trial court felt that the remaining jurors should also be released and new ones selected rather than to keep the remaining jurors and supplement the list by requiring others to be drawn. In *State* v. *Pine,* 56 W. Va. 1, 48 S. E. 206, this Court, in construing Section 14, Chapter 116 of the Code of 1899, Section 14, Chapter 42, Acts of the Legislature, 1891, the language of which was identical with Code, 52-1-15, said: "It would be a very narrow construction of this statute, falling far short of the broad terms thereof, to say a jury cannot be drawn and summoned under it, when for some irregularity, the panel is quashed, and thus delay the trials of all cases on the docket, until a subsequent regular or special term, thus subjecting parties to useless expense and trouble." In the absence of a showing by the defendant that the new venire was not called in good faith, or that the trial court was dissatisfied with the verdicts which the original venire of jurors had returned during their period of service, the defendant was not perjudiced by the summoning of a

new venire and the motion to quash was properly over-ruled.

The demurrer to the indictment was likewise properly overruled. The indictment clearly informs the defendant of the exact nature of the charge against him, and is sufficient to charge the statutory offense under the provisions of Code, 3-7-15. The indictment states that the defendant "by force, menace, and intimidation did prevent P. Wells, he the said P. Wells being then and there a commissioner of election of a primary election held on the 13th day of May, 1952, pursuant to law, from discharging the duties of the said P. Wells as such commissioner of election according to law, against the peace and dignity of the State." The second count of the indictment, in similar language, charges the defendant with an attempt to prevent Wells from discharging his duties as an election officer. The constitutional requirement that the defendant be informed of the cause of the accusation against him was fully met.

It was necessary for the State to prove, beyond all reasonable doubt, all of the material allegations of the indictment, and one of those material allegations was that Wells, at the time the defendant committed the alleged offense, was "a commissioner of election." The defendant was not indicted under the provisions of Code, 3-7-15, for interfering with the conduct of an election, nor was he indicted for assault and battery or any offense except the one upon which he was tried. There was abundant evidence from which the jury could have found that the defendant forcibly ejected Wells from the polling place, a short time before the polls opened, and if Wells was at that time "a commissioner of election", the verdict of the jury and the judgment thereon by the trial court are valid.

The trial court gave to the jury State's Instruction No. 4 which was as follows: "The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that P. Wells was notified by the County Court of Kanawha County, West Virginia, that he had

been appointed to serve in Precinct No. 109 as a counting commissioner for the Republican party in the primary election to be held on May 13, 1952, in said precinct, and that the said P. Wells presented himself at the polling place for said precinct 109 before 9:30 o'clock on the morning of May 13, 1952 to be sworn in as such commissioner of election, and that the defendant, Louis Risk, forcibly compelled the said P. Wells out of said polling place, even though the said P. Wells at that time had not actually taken the oath of commissioner of election for said precinct, then you should find the defendant, Louis Risk, guilty as charged in the indictment in this case."

The court refused Defendant's Instruction No. 10: "The Court instructs you that if you find from the evidence that the defendant, Louis Risk, forcibly ejected P. Wells from the polling place for Precinct No. 109, on May 13, 1952, before the said P. Wells was a lawful commissioner of election, and that Risk thereafter did not interfere with the said P. Wells to prevent P. Wells from discharging his duties as a commissioner of election, then you must acquit the defendant, Louis Risk."

A determination of whether the court was right in its rulings upon these two instructions calls for a more detailed statement of facts relative to the selection of republican election officials for Precinct No. 109. At the proper time, and in accordance with the provisions of Code, 3-4-15, Roy H. Pierson, Chairman of the Kanawha County Republican Executive Committee, submitted to the county court a list of election officials to be appointed for the 9th Ward of the City of Charleston, in which Precinct No. 109 was situate, as well as for the other precincts in Kanawha County. Mr. Pierson, in his testimony, states that the list which he submitted for this precinct was prepared and given to him by the committeeman and committeewoman for the 9th Ward. There is no testimony showing that this list of prospective election officials was approved by a majority of the entire membership of the Kanawha County Executive Committee. See *State ex rel. Robertson* v. *County Court,* 131 W. Va. 521, 48 S. E. 2d.

345. However, the county court did, in the early part of April, proceed to appoint the four persons, heretofore named, as republican election officials for Precinct No. 109.

Miss Louetta Biddle testified that she was employed by the county court prior to the May 13, 1952, primary election, and that it was her duty to mail notices to all election officials in the county who had been appointed by the county court. She stated that each notice was signed by the three county commissioners, and had attached to it a detachable slip which was to be returned to the county court by each election official informing the court whether or not he or she would serve as such election official. She testified that her records showed neither acceptance nor rejection by Israel Simon and Joseph Matz, counting clerk and counting commissioner, respectively, of precinct No. 109. She further testified that if they, or either of them, had signified their intention of not serving, the county court would have so informed Mr. Pierson, the county chairman, and requested suggestions for replacements. The defendant, who was a candidate for republican committeeman in the 9th Ward against the incumbent, Joe Wilan, apparently being unofficially advised of the fact that Simon and Matz would not serve, caused Lawrence Eaton and H. N. Haddox to be available at the polling place of Preinct No. 109, prior to the opening of the polls, for the purpose of serving in the place of Simon and Matz. Shortly before the polls opened one of the election officials having announced that two additional republican election officials were needed, Eaton and Haddox entered the polling place, and being approved by the other election officials, had administered to them the oath of office. Very shortly after that occurred, the prosecuting witness Wells entered the polling place with a notice, signed by the three commissioners of the County Court of Kanawha County, purporting to be the appointment of Wells as counting commissioner of Precinct No. 109. It appears further from the testimony that Joe Wilan, the committeeman for that ward, who was opposing the defendant, had also become aware of the fact that Simon

and Matz would not serve as republican election officials, and had secured the services of Wells and his brother Sam Wilan to replace them in that capacity. Wells stated in his testimony that he secured the paper writing, which the State contends was his official appointment, from Committeeman Joe Wilan three days prior to the primary election date. As heretofore stated, this instrument was introduced as State's Exhibit No. 1, and had on it some scratch marks, and other notations, including two names that are not important to this case. Joe Wilan did not testify as a witness, nor did any of the commissioners of the county court. The record does not disclose where or by what means Joe Wilan secured the instrument which became State's Exhibit No. 1.

Code, 3-4-15, provides that: "* * * A vacancy or vacancies on the counting board shall be filled in the manner herein provided for filling a vacancy or vacancies on the receiving board, except that such vacancy or vacancies shall be determined and filled as of the hour appointed in this chapter for the counting board to attend at the polls. * * *" That time designated is not later than three hours after the opening of the polls, or 9:30 A.M. If Israel Simon and Joseph Matz had presented themselves at the polling place of Precinct No. 109 at or before 9:30 o'clock on the morning of the election with the proper credentials, which had theretofore been mailed to them, they would have been entitled to recognition as the republican counting clerk and counting commissioner of that precinct. Prior to that time, according to this record, no one had supplanted them as election officials at that precinct. While it has been argued that the appointment of Simon and Matz by the republican county chairman was not valid, inasmuch as the list of names of officials for the 9th Ward had not been approved by the entire republican executive committee, it is the opinion of this Court that they became duly appointed election officials for that precinct when the county court approved them, and the court had no authority thereafter to supplant these men or replace them with others, unless they notified the court of their

refusal to serve, or the court secured information of their ineligibility, and by proper procedure cancelled their appointments and named other persons in their place. There is no record evidence or any other kind of evidence that this happened, except the somewhat mysterious appearance of the paper which Joe Wilan gave to Wells on the Saturday before the election.

Chapter 3, Article 4, Section 15 of the Code, as amended by Chapter 85, Acts of the Legislature, Regular Session, 1951, provides as follows: "* * * The county court shall by mail notify all commissioners and poll clerks of their appointment, and include with such notice an appropriate form for each person so appointed to return indicating whether or not he will serve as such commissioner or poll clerk. It shall be the duty of all persons so appointed to immediately return said form to the county court. In the event any of the persons so appointed refuse to serve as such commissioners or poll clerks, the county court shall immediately notify the chairman of the county executive committee of the political party from which such commissioners and poll clerks are to be selected. If the chairman of the political committee so notified promptly recommends persons to be appointed to replace those declining to serve, it shall be the duty of the county court to appoint the persons so recommended. When no such recommendations are made the county court shall proceed to fill the vacancies. * * *" County courts do not have the authority under this or other sections of the Code to replace election officials who have theretofore been validly appointed. To hold otherwise would render impotent all of the other provisions of the Code relative to the appointment of election officials. It would mean that a county court could issue last minute appointments to persons not theretofore selected as election officials, and by placing this list in the hands of a select group of partisans for distribution at their whim and caprice could nullify the numerous provisions of our law enacted for the protection of the electorate in an effort to secure elections free of fraud and corruption.

It is not entirely clear whether Eaton and Haddox were selected as election officials in accordance with the provisions of Code, 3-4-15, prior to the appearance of Wells, and, of course, they could not have supplanted Simon and Matz prior to 9:30 o'clock if they had appeared, although there is no prohibition in the statute against members of a counting board, assuming that they are properly appointed, taking the oath of office prior to that time. While the rights of Simon and Matz were paramount to the other contenders, the position of Wells, at the time of the altercation, was certainly not superior to that of Eaton and Haddox. When Wells was ejected from the polling place, and later returned with a police officer, Eaton and Haddox left the polling place and Wells and Sam Wilan took the oath of office as counting commissioner and counting clerk, respectively. Wilan served throughout the day in that capacity, and Wells did likewise during the time that he was present, as heretofore related.

Upon the facts presented by this record, this Court holds, as a matter of law, that P. Wells was not an election official at Precinct No. 109 at the time he was ejected therefrom by the defendant, and, therefore, it was reversible error for the trial court to give State's Instruction No. 4, and to refuse Defendant's Instruction No. 10. Furthermore, in view of the failure of the State to prove beyond all reasonable doubt that P. Wells, at the time he was assaulted, was a commissioner of election, that being one of the material allegations in the indictment, the motion of the defendant for a directed verdict should have been sustained.

The judgments of the Intermediate and Circuit Courts of Kanawha County are reversed and the case remanded for further proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded.*