Ronnie STINNETT, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 11, 1971.

William A. Fenwick, New York City, William L. Wilson, Jr., Richard D. Gilliam, Jr., Owensboro, for appellant.

John B. Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

EDWARD P. HILL, Judge.

This is the third appeal in appellant's efforts to obtain relief under RCr 11.42. The first appeal [Stinnett v. Commonwealth, Ky., 446 S.W.2d 292] resulted in the reversal of a judgment overruling, without a hearing, his motion to vacate three judgments of conviction under which he is serving 18 years' imprisonment. Specifically he was charged with breaking and entering, shooting and wounding, and carrying a concealed deadly weapon.

On remand a hearing was held and judgment entered overruling his RCr 11.42 motion to vacate. On appeal [Stinnett v. Commonwealth, Ky., 452 S.W.2d 613] this court remanded with directions to furnish records on appeal and other matters shown in the opinion.

This appeal is now before us with a complete record of the hearing. He presents three arguments that may be summarized as follows. First he says he was denied effective assistance of counsel as a result of the standard procedure of the Daviess Circuit Court in selecting attorneys to represent indigent defendants. In addition thereto, he says that the manner in which he was actually represented by appointed counsel shows on the face of the record that he did not receive "effective assistance" of counsel. His third argument is that he was denied his right of appeal provided by the "laws of the Commonwealth of Kentucky" and guaranteed by the Fourteenth Amendment to the United States Constitution.

Under appellant's first argument, he claims that from a roster of eighty attorneys practicing in the Daviess Circuit Court, a list of names of fifteen of the most recently admitted attorneys is kept from which all attorneys are appointed to represent indigent defendants; that the attorney appointed to represent the appellant was taken from that list; that by this manner of selection the experienced attorneys are excused from representing indigent defendants, and only the inexperi-

enced ones remain to draw from. Appellant calculates that this manner of selection results in 19 percent of the bar representing all of the indigent defendants.

This question was not raised in appellant's motion to vacate. See citations supra, relative to previous appearances of this case in this court. The question is not properly presented for appellate review. Nevertheless, in view of the argument that a fundamental constituional right has been violated, we shall discuss and pass upon the question.

■ ·We begin with the recognition that the trial judge is vested with a broad discretion in the selection and appointment of counsel for indigent defendants. His conduct of the trial enables him to observe the manner in which the attorney appointed performs his duties.

Of the eighty attorneys of the bar, this record is silent as to how many are inactive, how many specialize in civil practice, or how many are physically able or unable to practice criminal cases.

The bare fact that the fifteen attorneys making up the list are the youngest members of the bar does not *ipso facto* mean that they are incapable or ineffective. In fact, there are those today who place great emphasis on the capacity and ability of youth.

When all is said and done, we are not persuaded that the trial judge abused his discretion in using this system of selecting attorneys in indigent cases herein questioned.

■ Appellant next points out a number of instances that occurred during the trial which allegedly demonstrate that appointed counsel did not render "effective assistance" in the presentation of his defense. The first such instance relates to "pretrial hearings," in which appellant now says that the advice of his attorney to waive examining trial was prejudicial to appellant and demonstrated that he, appellant, did not receive "effective assistance" of counsel, guaranteed by § 11 of the Constitution of Kentucky and the opinions in Gideon v. Wainwright, 372 U.S. 335, 83 S. Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); and Rice v. Davis, Ky., 366 S. W.2d 153 (1963).

There may be instances in which the defendant may obtain an advantage by demanding an examining trial. In other instances, a waiver may result in a benefit to the defendant. Certainly we cannot say that the advice to waive examining trial constituted evidence of ineffective representation.

Next appellant argues that the failure of appointed counsel to obtain a copy of the minutes of the grand jury proceeding and failure to advise appellant to plead not guilty constituted additional evidence that his counsel was ineffective. It would seem that these arguments are so counterfeit they demand little attention. However, it should be noted that appellant's appointed counsel gave the most appropriate answer to this argument when he testified that after his original appointment as counsel for appellant (on June 29, 1968) and before the trial September 10, 1968, he visited his client, the appellant, a number of times while the latter was in jail; that the appellant went into details concerning the charges and admitted that he and one Whitmer were caught by the owner while attempting to steal from the store; that he, appellant, shot the owner and then the owner shot both him and Whitmer; and that the owner and another person held the appellant and Whitmer at bay until the sheriff arrived. With the accused admitting his guilt, there was little need to have an examining trial or the proceedings of the grand jury. We fail to see in what way a plea of not guilty could have improved his lot.

Appellant argues that his appointed counsel further demonstrated ineffective counselling by failure in the matter of

"consultation." Well, there was consultation between appellant and his counsel before the preliminary hearing, on September 3, 1968 (seven days prior to trial), and on other occasions. With appellant's admissions, we wonder what purpose would have been served by further consultation. His attorney testified he made twenty pages of notes and had a number of consultations with appellant and his relatives other than those first above mentioned; that he endeavored to obtain an agreement from the Commonwealth's Attorney to recommend a lesser punishment upon a guilty plea by the appellant; that the best deal he could ever obtain from the Commonwealth's Attorney was fifteen years, while appellant held out for not over five years.

The next argument presented in appellant's brief is that his counsel did not conduct a proper "investigation." Latching onto appointed counsel's argument that appellant was too intoxicated to be able to entertain a criminal intent, the appellant, by his present counsel, now argues that his appointed counsel failed to make a proper investigation as to how much and where the appellant drank before the commission of the crime. His counsel examined the appellant on this point and cross-examined Whitmer on the question of appellant's drinking, and this evidence was not contradicted.

Complaint is made that appointed counsel failed to investigate the possibility that the man robbed shot himself by a ricohetting bullet from his own gun; that he failed to request a ballistic test or inquire as to whether the Commonwealth had made such a test; that he never visited the scene of the crime to familiarize himself with the physical layout of the store; that he failed to interview the witnesses who testified before the grand jury; that he failed to investigate the case by interviewing Deputy Sheriff Norris so as to be able to contradict him.

Appellant next says appointed counsel failed to "find, interrogate and subpoena witnesses"; that he failed to object to "objects and testimony"; that he advised appellant and two of his brothers that he had checked the record and there was no basis for appeal.

We are told that appointed counsel did not engage in appropriate "consultation"; that he did not conduct the proper "investigation"; and that he should have advised a plea of not guilty and recommended an appeal. The trial court heard the evidence and obviously gave considerable weight to the evidence of the court-appointed attorney. When a man is caught "red-handed" committing a serious and heinous crime and admits the whole thing, how on earth can he expect his attorney to "communicate," and "investigate" any further. In effect he now says, why didn't the attorney fabricate, procrastinate, and mitigate. The trial court was unimpressed with these theoretical arguments that are impertinent to the facts. So are we.

Appellant says he was unconstitutionally denied his right to appeal. The trial court apparently believed the testimony of appointed counsel when he testified that he did advise appellant that an appeal would not succeed and that he would try to get an order providing that the sentences run concurrently, which he did. He also testified that appellant said that if he could have the sentences run concurrently, he would be satisfied to forego an appeal.

The appellee has devoted a large part of its brief to a recommendation that appellant be prosecuted for perjury in connection with his testimony on the RCr 11.42 hearing. We can understand and appreciate the mountain of work and expense involved in this post-conviction proceeding, but this court is not in the business of initiating prosecutions. Those are questions that must be addressed to the prosecuting attorney and/or the Attorney General.

The judgment is affirmed.

All concur.