The State of Ohio, Appellee, *v.* Peoples et al., Appellants.

(No. 5045—Decided June 15, 1971.)

*Mr. Vincent E. Gilmartin,* prosecuting attorney, and *Mr. John A. Kicz,* for appellee.

*Mr. Lawrence Friedlander* and *Mr. Louis K. Levy,* for appellants.

Lynch, J. Defendants, appellants herein, are appealing their conviction by a jury of grand larceny, a violation of R. C. 2907.20.

On May 5, 1970, at approximately 2:27 a. m., plant protection police working at the Youngstown Sheet and Tube Brier Hill Works found that approximately 254 feet of copper cable had been cut down from the side of the Coke By-Products Building and was missing. A check of the surrounding area produced nothing. Approximately 6:00 a. m., when it began to get light, the plant protection police found marks in the heavy dew where the stolen cable had been dragged. They followed these marks to the north boundary fence. While watching from this fence about 6:50 a. m. a pickup truck drove west on old West Federal Street and stopped about 75 feet away from where the plant protection police were watching. Defendants got out of the truck and began to load copper cable into the truck. At this time, the plant protection police climbed over the fence, approached defendants with weapons in their hands, ordered them to stop what they were doing and to raise their hands, and asked them what they were doing. Defendants stated they had found the copper cable there.

The plant protection police searched defendants and the truck, but the only thing they found, besides the copper cable that was lying in full view in the truck, was a temporary ten-day license in the name of Mack Peoples in the glove compartment of the truck.

The plant protection police then called the Youngstown police, who took custody of them.

The evidence indicates that the copper cable that defendants were loading on the truck was the same copper

cable removed from the Youngstown Sheet and Tube property.

Defendant Mack Peoples testified that he and defendant Amos Stone were delivering a truck that he had repaired that night when the truck ran out of gas. They were walking home past old West Federal Street about 6:00 a. m. when they noticed the copper cable along the road. They then walked to Tipper's Auto Wrecking on Cherry Street, which the evidence indicated was 4.1 miles from where the copper cable was located, and got a truck which they drove back to pick up the copper cable. Defendant Peoples contended that they arrived with the truck where the copper cable was located about 7:30 a. m.

Defendants' first assignment of error is that the verdict is against the manifest weight of the evidence and that the trial court erred in overruling defendants' motions to direct a verdict for defendants. We have reviewed the record of this case and find defendants' first assignment of error to be without merit.

Defendants' second assignment of error concerns the interrogation of defendants by the plant protection police without being advised of their constitutional rights and the search of defendants and their truck by the plant protection police.

The record is not too clear as to what official authority the plant protection police had to enforce the law, but the record does indicate that their authority to arrest was restricted to the property of Youngstown Sheet and Tube Company.

R. C. 2935.04 provides, as follows:

"When a felony has been committed, or there is reasonable ground to believe that a felony has been committed, any person without a warrant may arrest another whom he has reasonable cause to believe is guilty of the offense, and detain him until a warrant can be obtained."

We are inclined to feel that the plant protection police of the Youngstown Sheet and Tube Company had legal authority to arrest defendants under the circumstances

of this case. But even if they did not have such authority, we find that whatever constitutional rights of either of the defendants that might have been affected by their being arrested by the plant protection police of the Youngstown Sheet and Tube Company and their transfer to the Youngstown Police, neither of the defendants were prejudiced by such arrest in the trial of this case.

Cases outside of Ohio have held that the purport of *Escobedo* v. *Illinois,* 378 U. S. 478, and *Miranda* v. *Arizona,* 384 U. S. 436, is to prevent oppressive police tactics which violate individual rights and produce involuntary confessions, and that a person not a police officer, or not acting in concert with or at the request of police authority, is not required to extend constitutional warnings prior to the eliciting of an incriminating statement. A private security officer and a private detective have been held not to be officers of the law in such capacity that they have to render a constitutional warning precedent to the taking of a statement in the nature of a confession. *Schaumberg* v. *Nevada,* 83 Nev. 372, 432 P. 2d 500; *People* v. *Morgan,* 24 Mich. App. 660, 180 N. W. 2d 842; *People* v. *Omell,* 15 Mich. App. 154, 166 N. W. 2d 279.

Even if the plant protection police were required to give the "Miranda" warnings, we cannot see how they were prejudiced in any way by the failure to give such warnings. When defendants were asked by the plant protection police what they were doing, they stated that they were loading copper cable which they had just found at that location. Defendant Mack Peoples testified to the same effect at the trial of the case. Thus, there is no "confession" involved in this case. Defendants did not say anything to the plant protection police that would incriminate them with the crime with which they were ultimately charged.

The only items introduced as evidence at the trial as a result of the search conducted by the plant protection police were the copper cable and the temporary ten-day license in the name of Mack Peoples.

Objects in plain view of an officer, who has a right to

be in a position where he is, do not involve any problem of search or seizure. *Harris* v. *United States,* 390 U. S. 234.

Since the copper cable was in plain view of the plant protection police, there is no problem of an illegal search as to the copper cable.

The temporary ten-day license in the name of Mack Peoples might raise a question of an illegal search. However, even if such a search was illegal, which is open to question, we hold that the introduction of the temporary ten-day license of Mack Peoples in the trial of this case was not prejudicial to either of the defendants. If anything, the evidence was accumulative because both defendants were amply identified independent of the temporary license.

We hold defendants' second assignment of error to be without merit.

Defendants' third assignment of error concerns their bail before and during the trial in this case Defendants retained Don L. Hanni as their attorney and their bail was set at $1,500 each on May 6, 1970. Both defendants complied with this bail and were out on bail until December 14, 1970, when attorney Hanni withdrew as their counsel, apparently because the rest of his requested attorney fee was not paid. The trial court granted attorney Hanni's motion to withdraw as counsel, and at the same time increased each of the defendant's bail bond to $10,000. Neither defendant could make the $10,000 bond, and they were incarcerated in jail.

We can appreciate defendants' feelings over such increase in bond in view of the above facts, because such action of the trial court appears rather unusual. However, we feel that it is too late for defendants to raise that issue at this time. That issue could have been raised before this court on a writ of habeas corpus prior to defendants' trial, but this was not done.

The question before this court is whether defendants had a fair trial, and nothing has been called to our attention as to how defendants' incarceration in jail because of the increased bail bond requirement affected the outcome of the trial.

Therefore, we overrule defendants' third assignment of error.

Defendants' fourth assignment of error is that they were denied a fair trial because of inadequate representation by their counsel due to the inexperience of their attorney. After attorney Hanni withdrew as defendants' counsel, he apparently sent attorney Michael Rich, who represented defendants during the trial. This was attorney Rich's first time in court. Thus, while attorney Rich was not appointed by the trial court at county expense, defendants apparently did not have much choice in the selection of their trial counsel.

The second paragraph of the syllabus of *Kramer* v. *Alvis*, 103 Ohio App. 324, is as follows:

"A lawyer admitted to practice by the Ohio Supreme Court is presumed to be qualified to defend a client in a criminal prosecution, and, unless it clearly appears that a lawyer is so incompetent or conducts a defense so negligently and so incapably as to deny his client the benefit of a fair trial and judicial determination, such client is not denied the assistance of counsel or due process of law as contemplated by the Constitution."

On the question of whether a judgment of conviction is invalid because retained counsel for the accused was incompetent, most courts have taken the position that mere inexperience or unskillfulness, mistakes or errors of judgment, and improper trial strategy in connection with the case are ordinarily insufficient to justify setting aside a judgment of conviction. Annotation, 74 A. L. R. 2d 1390, 1399.

However, most courts considering the question of incompetency of retained counsel hold that the judgment of conviction is void when counsel's representation has been so inadequate as to make the trial a farce and a mockery of justice, thereby denying the accused a fair trial (due process of law), or invading his constitutional right to the effective assistance of counsel. 74 A. L. R. 2d 1390, 1403. See *State* v. *Cutcher*, 17 Ohio App. 2d 107.

Defendants point out that no motions to quash, to inspect, for a bill of particulars, or to suppress either state-

ments of defendants or items obtained as a result of search and seizure were filed in this case. Such motions would ordinarily have been filed while attorney Hanni, one of the most experienced criminal lawyers in the Mahoning County Bar, was still representing defendants. In our opinion, the filing of such motions would not have been helpful to defendants in this case, and we conclude that is why such motions were not filed.

Defendants take exception to their trial counsel bringing out the criminal record of defendant Mack Peoples when Peoples testified.

R. C. 2945.42 provides, as follows:

"No person is disqualified as a witness in a criminal prosecution by reason of his interest in the event thereof as a party or otherwise, or by reason of his conviction of crime. * * * Such interest, conviction * * * may be shown for the purpose of affecting the credibility of such witness. * * *"

Under R. C. 2945.42, the defendant in a criminal prosecution may be cross-examined as to his conviction of crime under state or federal laws. *Harper* v. *State*, 106 Ohio St. 481; *State* v. *Murdock*, 172 Ohio St. 221; 15A Ohio Jurisprudence 2d 536, Criminal Law, Section 366.

Since defendant Peoples convictions under state or federal laws could have been brought out on cross-examination when he took the stand to testify, many competent defense counsel would have done exactly what defendants' trial counsel did in bringing out such convictions themselves for the purpose of lessening the import of these convictions upon the jury.

Defendants also point out that their trial counsel did not request the trial court to give a charge on a lesser included offense at the close of the trial.

The syllabus of *State* v. *Nolton*, 19 Ohio St. 2d 133, is as follows:

"If in a criminal case the evidence adduced on behalf of the defense is such that if accepted by the trier of the facts it would constitute a complete defense to all substantive elements of the crime charged, the trier will not be permitted to consider a lesser included offense."

Defendants do not specify what lesser offense would have been possible here. The evidence was such that defendants were either guilty or not guilty of grand larceny. If they were not guilty of grand larceny, they were not guilty of any other crime. Therefore, we hold that the facts in this case do not justify a charge on a lesser included offense.

The evidence in this case was overwhelming that the plant protection police of the Youngstown Sheet and Tube Company caught defendants 75 feet from the property of the Youngstown Sheet and Tube Company, with copper cable which had been stolen a few hours previously. Defendants offered an explanation of finding this copper cable, but the jury did not believe their story. Defendants have offered nothing specific to establish how their trial counsel could effectively overcome the evidence presented against them at the trial, or what additional questions could have been asked of the state's witnesses to make the defense of defendants more effective.

After consideration of the entire record, and the complaints of ineffective representation by defendants' trial counsel set out in the brief, we conclude that the record does not disclose anything which defendants' trial counsel did or did not do which was prejudicial to the rights of defendants. We, therefore, find defendants' fourth assignment of error to be without merit.

*Judgment affirmed.*

O'NEILL, P. J., and JOHNSON, J., concur.