STATE OF WEST VIRGINIA

*v.*

RAYMOND PRATT

(Nos. 13772, 13773)

Decided May 2, 1978.

*Ward D. Stone, Jr.,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Gregory W. Bailey,* Assistant Attorney General, for defendant in error.

HARSHBARGER, JUSTICE:

Raymond Pratt was found guilty on January 28, 1975 of robbing the Westover Foodland in November, 1974. He then, on February 19, 1975 was found guilty of having robbed the Acme Supermarket September 14, 1974. Both trials were in Monongalia County, where the crimes were committed.

We have consolidated the cases in this opinion because several of the assignments of error are common to both.

### I.

In both cases defendant moved for change of venue because of wide-spread hostility and angry sentiment in Monongalia County against him. He introduced newspaper articles that reported the robbery, described the culprits and reported other robberies in the area and elsewhere.

Our Constitution, Article III, Section 14, provides that "for good cause shown" an accused person may obtain change of venue, and *W.Va. Code,* 62-3-13 says, "A

court may, on the petition of the accused and for good cause shown, order the venue of the trial of a criminal case in such court to be removed to some other county."

We held in *State v. Wilson*, ___ W. Va. ___, 202 S.E. 2d 828 (1974), citing Point 2 of the Syllabus of *State v. Wooldridge*, 129 W. Va. 448, 40 S.E.2d 899 (1946):

> To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests upon defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused.

*See also, State v. Dandy*, 151 W. Va. 547, 153 S.E.2d 507 (1967); *State v. Hamric*, 151 W. Va. 1, 151 S.E.2d 252 (1966); *State v. Pietranton*, 140 W. Va. 444, 84 S.E.2d 774 (1954).

As stated in *Wilson, supra*, at 830: "Basically, the good cause alluded to in the constitution which the defendant must prove is that he cannot get a fair trial in the county where the offense was alleged to have been committed."

Wide-spread publicity about the case does not require change of venue, *State v. Hamric, supra*, nor does proof that prejudice exists against an accused, unless it appears that the prejudice against him is so great that he cannot get a fair trial. *State v. Riley*, 151 W. Va. 364, 151 S.E.2d 308 (1966). In *State v. Dandy, supra*, we held that a present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county. *See, State v. Siers*, 103 W. Va. 30, 136 S.E. 503 (1927).

To summarize, our cases hold that good cause for change of venue means proof that a defendant cannot get a fair trial in the county where the offense occurred because of the existence of extensive present hostile sentiment.

Here, defendant presented no evidence of the existence of poisonous prejudice against him, and the trial court did not abuse its discretion in denying the motion.[1] See, *State v. Sette*, No. 13806, (W. Va. March 28, 1978), where good cause for change of venue was clearly proved.

## II.

Pratt's appointed lawyer moved the trial court to appoint additional, more experienced counsel to help in both cases. He faced the prospect of defending Pratt in these two armed robbery cases, and had been appointed to represent another criminal defendant to be tried in the same term.[2]

---

[1] Change of venue is not such an onerous burden upon courts that they should be at all reluctant to grant it in cases where emotion runs high in the community and the general population has been infected with ill will against the accused, making questionable the state's ability to provide him a fair trial.

[2] This affidavit supported the motion:

"This day personally appeared before me, Ward D. Stone, Jr., who upon his oath deposes and says: that he is the Court appointed attorney to represent the Defendant, Raymond Pratt, who has been charged with armed robbery of Westover Foodland in Monongalia County, West Virginia; that he is also the Court appointed attorney for the Defendant, Raymont Pratt, who has been charged with armed robbery of Acme Markets, Inc; that he was also appointed by the Court on Monday, January 13, 1975, as the Court appointed attorney for Richard Abraham Lee, who has been charged with sale of a controlled substance in Monongalia County, West Virginia; that criminal trials are scheduled to begin on Monday, January 27, 1975; that he has represented numerous Defendants in Court appointed criminal cases, but that he has only been hired as an attorney in less than five criminal cases; that he has never represented a Defendant who could receive the amount of sentence that this Defendant will receive if convicted, namely a determinate sentence of not less than ten years; that as a result of never having tried a criminal case which was a capital offense and

The court denied the motions, filed January 23, the next day; and on January 27, trial of the Westover case began. The judge's orders stated that the motions had no legal precedent, were untimely and "* * * attorney Ward D. Stone, Jr., is in all respects competent and has in the past exhibited himself to be effective counsel."

Our Court has not written about the due process and equal protection arguments implicit in the situation present here, where the government is represented by able and experienced prosecutors and an indigent defendant has as his appointed counsel a self-proclaimed inexperienced (though certainly not inarticulate) lawyer. Authorities elsewhere hold that inexperience alone is not proof of ineffectiveness of counsel. The degree of his expertness is proved by the trial record. *See, United States v. Kelley,* 559 F.2d 399 (5th Cir. 1977); *United States v. Easter,* 539 F.2d 663 (8th Cir. 1976); *United States ex rel. Williams v. Twomey,*[3] 510 F.2d 634 (7th Cir. 1975); *Douglas v. Commonwealth of Virginia,* 327 F. Supp. 689 (W.D. Va. 1971); *People v. Gonzales,* 40 Ill. 2d 233, 239 N.E.2d 783 (1968); *Stinnett v. Commonwealth,* 468 S.W.2d 784 (Ky. 1971); *State v. Crockett,* 543 S.W. 2d 314 (Mo.App. 1976); *People v. O'Guin,* 26 Mich. App. 305, 182 N.W.2d 103 (1970); *State v. Peoples,* 28 Ohio App. 2d, 162, 275 N.E.2d 626 (1971).

In *People v. Blevins,* 251 Ill. 381, 96 N.E.214 (1911), the court recognized that "oppression"—a word not often

---

because of the severity of the sentence for the crime of armed robbery, as well as because deponant has been appointed as attorney to represent Defendants in three indictments in this term of Court, deponant believes that in order to be able to prepare an adequate defense for this Defendant, Raymond Pratt, it will be necessary for the Circuit Court of Monongalia County to appoint an experienced criminal trial lawyer to assist deponant in the trial of Defendant's case."

[3] In *Twomey,* the Court said:

"Necessarily, every lawyer must begin his career without experience. His first case is not inevitably so ill-prepared or poorly presented as to justify a finding of his incompetence. Portia without experience was a remarkably successful representative of Antonio. In estimating counsel's performance, the issue is not how much experience he has had, but how well he acted."

used these days—may result if the prosecution over-matches defense counsel. This interesting case, 67 years old, contains meaningful language:

> Oppression may result to a defendant defended by young and inexperienced counsel, where he is prosecuted by an array of experienced and able attorneys, either in arriving at a conclusion as to his guilt or innocence of the charge, or in determining upon the punishment to be inflicted upon him where he is found guilty. 96 N.E. at 218.

The Illinois court said that ". . . This record shows that by reason of the inexperience of plaintiff in error's counsel incompetent evidence of a highly prejudicial nature was introduced by the prosecution on the trial." 96 N.E. at 218.

The Pratt records disclose no such defects in the defense, and other errors in the trials make exhaustive development of this point unnessary. However, we agree with those authorities that place upon the trial court the responsibility to see that oppression does not occur in criminal cases because of prosecutorial overmatch with defense counsel.

## III

Defendant contends that the court in the Westover trial should have permitted defense counsel to question some of the prospective jurors individually, or should have itself questioned them individually, following answers these jurors gave suggesting possible prejudices, when they responded to the court's general inquiries of the panel.

In *State v. McMillion*, 104 W. Va. 1, 138 S.E.732 (1927) this Court pronounced, properly, the purpose of *voir dire* to be to protect defendant's right to a jury composed of persons who have no interest in the case and are free from bias or prejudice. And in *State v. Beacraft*, 126 W. Va. 895, 30 S.E.2d 541 (1944) Syllabus 2, "In a criminal case, the inquiry made of a jury on its *voir dire* is within

the sound discretion of the trial court and not subject to review, except when the discretion is clearly abused."

*State v. Pendry*, ____ W. Va. ____, 227 S.E.2d 210 (1976) teaches that *W.Va. Code*, 56-6-12 ". . . clearly requires the court to provide for an adequate *voir dire* to the end that a juror be fully qualified, not related to either party, with no interest in the cause or sensible of any bias or prejudice. If a party believes that a juror is subject to a challenge for cause, he may even introduce evidence in support of his objection to the juror." 227 S.E.2d at 216.

In *Pendry*, the defense unsuccessfully challenged four jurors for cause, then asked leave of the court to question each of them in chambers to explore certain matters disclosed on *voir dire*. Instead, the court addressed a general inquiry to the whole panel. We held, "That procedure, although unobjectionable, may not have been as desirable as allowing a procedure which would have permitted possible matters of bias or prejudice to be more fully explored so that there could have been no question of lack of qualification on the part of any juror and so that preemptory challenges might have been more intelligently made." 227 S.E.2d at 217.

We wrote in *W. Va. Human Rights Commission v. Tenpin Lounge, Inc.*, ____ W. Va. ____, 211 S.E.2d 349 (1975):

> *Voir dire* examination is designed to allow litigants to be informed of all relevant and material matters that might bear on possible disqualification of a juror and is essential to a fair and intelligent exercise of the right to challenge either for cause or peremptorily. Such examination must be meaningful so that the parties may be enabled to select a jury competent to judge and determine the facts in issue without bias, prejudice or partiality. As said in State v. Stonestreet, 112 W.Va. 668, 166 S.E. 378 (1952), quoting from State v. Lohm, 97 W.Va. 652, 125 S.E. 758 (1924), "Another requisite of a fair trial is a fair jury." Clearly, then, a fair trial requires a meaningful and effective *voir dire* examination.
> 211 S.E.2d at 353.

The question then is whether under these principles, the trial judge abused his discretion. He asked questions submitted by the defense, of the jury as a whole. Four jurors responded that they were related by blood or marriage to, or a close friend of, a law enforcement officer, and the judge was requested to ask certain additional questions of those jurors based upon their responses to the prior question. The court refused to submit individual qustions to the specific jurors, refused to excuse them, and made no further inquiry of the panel about police officer relationships.

In *State v. West*, ___ W. Va. ___, 200 S.E.2d 859 (1973), the defendant, an Assistant Attorney General of West Virginia, was convicted of larceny of cigarette tax stamps. This Court held that his counsel should have been allowed to challenge for cause one of the original panel of jurors because he was an employee of the Department of Public Safety (state police).

> ". . . [W]hen the defendant can demonstrate even a tenuous relationship between a prospective juror and any prosecutorial or enforcement arm of State government, defendant's challenge for cause should be sustained by the court. A defendant is entitled to a panel of twenty jurors who are free from exception, and if proper objection is raised at the time of impaneling the jury, it is reversible error for the court to fail to discharge a juror who is obviously objectionable. In any case where the trial court is in doubt, the doubt must be resolved in favor of the defendant's challenge, as jurors who have no relation whatsoever to the State are readily available.
>
> 200 S.E.2d at 866.

*See, State V. Wilson, supra; State v. Siers, supra; State v. Messer*, 99 W. Va. 241, 128 S.E. 373 (1925); and *State v. Hatfield*, 48 W. Va. 561, 37 S.E. 626 (1903).

It was therefore an abuse of discretion and reversible error for the court in the Westover trial to refuse to question, individually, those jurors who had disclosed

relationship or close association with police officers;[4] or alternatively simply to excuse them.

## IV

The state introduced into evidence the jacket worn by defendant at the time of his warrantless arrest and a diagram taken from the pocket of the jacket. Defendant objected to the admission of these items, requesting a hearing outside the presence of the jury to determine if they had been obtained incident to a lawful arrest. The exhibits were allowed into evidence without such hearing.

The general rule is that when evidence is obtained from a defendant at the time of his arrest without a search warrant, the arrest must be legal. *Draper v. U.S.*, 358 U.S. 307 (1956); *U.S. v. Rabinowitz*, 339 U.S. 56 (1950). As stated in 22A C.J.S. Criminal Law § 657 (14):

> In view of the rule, ... that a person when lawfully arrested may be searched without a search warrant, evidence secured by a reasonable search of the person and of the premises where the arrest was made, which premises were under the control of the person arrested, is competent. If, however, the arrest is unlawful, the evidence thereby procured is incompetent against accused ...

This principle is not disputed. How must the trial court determine if the arrest was lawful?

The rule in West Virginia is best pronounced in *State v. Harr*, 156 W. Va. 492, 194 S.E.2d 652 (1973). Harr was convicted of felonious and unlawful possession of marijuana for sale upon evidence of a purchase made by an undercover agent. The Court, through Justice Caplan, wrote:

> "Furthermore, it is now well established that, in the event a defendant in a criminal case objects

---

[4] In defendant's Acme trial, the same judge on his own motion removed from the panel two jurors whose responses to his inquiry of the panel revealed that they were parents of police officers.

to the admissibility of evidence on the ground of unlawful search, the question of admissibility should be detemined in the same manner required for determining the voluntariness of a confession.

194 S.E.2d at 655.

According to *Harr*, then, the right to a hearing out of the jury's presence about the lawfulness of an arrest from which evidence is produced, exists when defendant objects that the evidence was obtained through illegal search—illegal here because it was incident to an alleged invalid arrest. Denial of the hearing was reversible error.

## V

The Acme appeal presents an additional basis for reversal: the court chose jurors to complete its panel by an improper procedure.

The prosecuting attorney moved the court to order the Monongalia County sheriff "... to forthwith to procure and bring before this court at 1:30 p.m. on this day, fifteen persons to appear before this court at that time, to take their oaths, and otherwise be questioned by the court to serve on the venire."

Defendant's objections to jury selection different than statutorily authorized, were overruled.

*W.Va. Code*, 52-1-15. Summoning jurors during term.

"Nothing contained in the preceding sections shall prevent any court, in term time, from requiring other jurors to be *drawn by the clerk*, in the presence of the court, and to be summoned whenever it shall be found necessary for the convenient dispatch of business. But in such case, the *list prepared by the jury commissioners* under section four [§ 52-1-4] of this *article shall be exhausted before another list is made*. The jurors so summoned shall be required to attend on such days as the court shall direct." (Emphasis ours.)

In *State v. Risk*, 139 W. Va. 380, 80 S.E.2d 226 (1954), the question was, whether a trial court may discharge

the entire venire under *Code* 52-1-15 and summon a new one during term time, and we held that an entire new venire could be called. The new jurors were drawn from the jury commissioners' list. In *State v. Lutz*, 85 W. Va. 330, 101 S.E. 434 (1919), additional jurors were drawn from a list prepared by a jury commissioner.

The majority of our cases have held that statutes dealing with jury selection are directory. In *State v. Hankish*, 147 W. Va. 123, 126 S.E.2d 42 (1962), the specific error alleged was that *Code* 52-1-15 was not complied with because the clerk was not in the court's presence when he drew the jurors' names. We said:

> The statutes dealing with the selection of jurors have been held to be directory and error predicated thereon will not be reviewed after verdict unless it is apparent the accused was prejudiced thereby.
>
> 126 S.E.2d at 45.

The Court also refused to consider the assigned error because it was not raised at trial by plea in abatement.

In *State v. Huff*, 80 W. Va. 468, 92 S.E. 681 (1917), the Court held that the statutory provision that the jury commissioners make out and deliver a list of persons selected by them to the clerk is directory, and therefore delay in the performance of that duty was not a material irregularity. The Court also discussed a challenge to the array prompted by the fact that one jury commissioner's term had expired, and held that the panel was not thereby made infirm.[5]

---

[5] Language pertinent here, that indicates this Court's ancient commitment to panels of jurors chosen by commissioners, is found at 80 W. Va. 471:

> The common law process of choosing grand and petit jurors has in many states, including our own, been superseded by statutes, the object to be promoted by the change being to secure jurors less subject to criticism than were those sometimes convened under the former methods. The wisdom of this legislation is obvious. It minimizes the possibility and danger of that favoritism exhibited not infrequently when the authority to choose these essential court attendants was conferred

In *State ex rel. Burgett v. Oakley*, 155 W. Va. 276, 184 S.E.2d 318 (1971) the statute considered was *Code* 52-1-3 that provides for the appointment of jury commissioners by the circuit court. An indictment was held to be improper because it was returned by jurors chosen by jury commissioners who had been improperly appointed.

Our precedents permit minor deviations in procedure by which jurors are chosen for the panel; but there is no authority for choosing jurors other than from properly appointed jury commissioners' lists, a task to be performed by the circuit clerk, as mandated by Code, 52-1-15. The sheriff cannot simply pick them up from those citizens who happen to be about the courthouse, trading knives or such, *a la* the "law" in the Old West.

## VI

Two witnesses identified defendant in court as one of the robbers of the Acme Supermarket. Before trial, both had identified him in a group of photographs presented to them by the police. Both also testified that they recognized his picture when it appeared in a newspaper story about an unrelated offense, and both had been face to face with him on the night of the robbery. A police officer testified that these witnesses identified defendant in a photographic display book. He also testified about the identification procedure and the nature of the book.

Defense counsel objected to the in-court identification, asserting that Pratt was entitled to a hearing outside

---

exclusively upon a single officer, generally the sheriff of the county. Its object is to secure impartial men, and to apportion among many the service which formerly was confined to a few persons, these often being the social or political associates or friends of the officer to whom was committed the right of selection. For such enactments there was an imperative public demand; and so salutary has their operation been that the courts uniformly have liberally construed and upheld them, and refused to sustain a challenge to the array drawn and summoned from the list prepared according to the revised plan or method, where the objection is based solely on the ground of defect in the title to the office of the commissioners.

the presence of the jury to determine whether the photographic display book was overly suggestive. He also asked to exmine the books. His requests were denied.

There is no West Virginia authority that an accused has an absolute right to an *in camera* hearing on the suggestiveness of pre-trial identification procedures.[6] Petitioner relies upon *Simmons v. U.S.*, 390 U.S. 377 (1968). In *Simmons,* the defendant contended that use of photographs for pre-trial identification was unduly prejudicial. The Supreme Court held that convictions based on in-court identification after a pretrial photographic identification will be set aside on that ground only if the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384. The question of the right to an *in camera* hearing, though, was not discussed in *Simmons* since the District Court had held a suppression hearing on the defendant's motion.

The prevailing view from other jurisdictions, and we think the best one, is that the lower court must conduct an *in camera* hearing on the admissibility of the evidence when an in-court identification is challenged on the ground that it is tainted by a pre-trial identification made under constitutionally impermissible conditions. *People v. Rodriguez*, 68 Cal. App.3d 874, 137 Cal. Rptr. 594 (1977); *People v. Moreno*, 181 Colo. 106, 507 P.2d 857 (1973); *Cane v. Commonwealth, Ky.*, 556 S.W.2d 902 (1977); *State v. Coulombe*, Me., 373 A.2d 255 (1977); *Green v.*

---

[6] However, in *State v. Moore*, ___ W. Va. ___, 212 S.E. 2d 608 (1975) the trial court afforded such a hearing to take evidence on a defense motion to suppress an in-court identification. Defendant Moore alleged the in-court identification was based upon a suggestive "lineup" identification. This Court, relying principally upon *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed. 2d 1149 (1967), discussed the defendant's two points, that the pre-indictment "lineup" was illegal because defendant did not have a lawyer, and that the government failed to prove clearly and convincingly that the in-court identification was based on observation of the accused other than at the "lineup", and found no error in the trial court's denial of the motion.

*State,* ___ Md. ___, 380 A.2d 43 (1977); *State v. Wilbely,* 112 N.J. Super. 216, 270 A.2d 734 (1970); *People v. Balsano,* 51 A.D.2d 130, 380 N.Y.S.2d 129 (1976); *State v. Tuttle,* 33 N.C.App. 465, 235 S.E.2d 412 (1977); *Johnson v. Oklahoma,* Okla. Cr., 569 P.2d 480 (1977); *State v. De-Masi,* ___ R.I. ___, 374 A.2d 806 (1977).[7]

Also, defendant's protest that the refusal of the trial court to allow him to examine the book of photographs, denied him the right to effectively cross-examine the officer on the procedure used, is valid. He cites *Reed v. State,* Del. Supr., 281 A.2d 142 (1971), which held that photographs used for pre-trial identification should be made available to defense counsel so that the possibility of unfairness can be explored. *Simmons, supra,* also implicitly requires that defense counsel be allowed to examine any photographic display used by the state for identification purposes. Otherwise, there could never be effective cross-examination.

A defendant must be allowed to examine any photographic display used by the government during pre-trial identification procedure, to determine whether it improperly suggested his identity.

## VII

Did the trial court err in imposing a life sentence per *W.Va. Code,* 61-11-18, 19,[8] when the second conviction

---

[7] *Contra: See, Summitt v. Commonwealth,* Ky., 550 S.W.2d 548 (1977), which held that under certain circumstances an *in camera* hearing is not required. *Also, People v. Miller,* 31 Ill. App.3d 115, 333 N.E.2d 264 (1975) where the court held that the failure to hold the hearing may be harmless error when there is sufficient evidence in the record to show an independent basis for the in-court identification. *See also, State v. Purk,* 84 N.M. 668, 506 P.2d 1215 (1973) and *U.S. v. Poe,* 462 F.2d 195 (5th Cir. 1972), *cert. denied,* 414 U.S. 845 (1972).

[8] § 61-11-18. Punishment for second or third offense. of felony.

When any person is convicted of an offense and is subject to confinement in the penitentiary therefore, and it is determined, as provided in section nineteen [§ 61-11-19] of this article, that such person had been before convicted in the United States of a crime punishable by imprisonment in a penitentiary, the court shall, if

used in computing the recidivist penalty was for a crime that occurred three days before the crime that resulted in the first conviction? (Pratt had been twice convicted in Pennsylvania for felonies and as in these cases, his first conviction was for the second crime, and the second conviction was for the earlier crime.)

This Court recently held in *State v. McMannis*, No. 13839, (W. Va. , Apr. 4, 1978):

"... [A] circuit court has no jurisdiction to impose an enhanced sentence under the statute where the State fails to prove beyond a reason-

the sentence to be imposed is for a definite term of years, add five years to the time for which the person is or would be otherwise sentenced. Whenever in such case the court imposes an indeterminate sentence, five years shall be added to the maximum term of imprisonment otherwise provided for under such sentence.

When it is determined, as provided in section nineteen hereof, that such person shall have been twice before convicted in the United States of a crime punishable by confinement in a penitentiary, the person shall be sentenced to be confined in the penitentiary for life.

§ 61-11-19. Procedure in trial of persons for second or third offense.

"It shall be the duty of the prosecuting attorney when he has knowledge of former sentence or sentences to the penitentiary of any person convicted of an offense punishable by confinement in the penitentiary to give information thereof to the court immediately upon conviction and before sentence. Said court shall, before expiration of the term at which such person was convicted, cause such person or prisoner to be brought before it, and upon an information filed by the prosecuting attorney, setting forth the records of conviction and sentence, or convictions and sentences, as the case may be, and alleging the identity of the prisoner with the person named in each, shall require the prisoner to say whether he is the same person or not. If he says he is not, or remains silent, his plea, or the fact of his silence, shall be entered of record, and a jury shall be impanelled to inquire whether the prisoner is the same person mentioned in the several records. If the jury finds that he is not the same person, he shall be sentenced upon the charge of which he was convicted as provided by law; but if they find that he is the same, or after being duly cautioned if he acknowledged in open court that he is the same person, the court shall sentence him to such further confinement as is prescribed by section eighteen [§ 61-11-18] of this article on a second or third conviction as the case may be.

able doubt that each penitentiary offense, including the principal penitentiary offense, was committed subsequent to each preceding conviction and sentence."

Syllabus Point.

*McMannis* is directly on point. *See also, State ex rel. Yokum v. Adams*, 145 W. Va. 450, 114 S.E. 2d 892 (1960); Syllabus Point 3, *State ex rel. Medley v. Skeen*, 138 W. Va. 409, 76 S.E.2d 146 (1953); *Dye v. Skeen*, 135 W. Va. 90, 62 S.E. 2d 681 (1950); *State ex rel. Stover v. Riffe* 128 W. Va. 70, 35 S.E.2d 689 (1945).

The purpose of the habitual criminal statute is to deter a person from future criminal behavior. *Dye v. Skeen, supra. See also, Moore v. Coiner*, 303 F.Supp. 185 (N.D. W. Va. 1969). To hold other than we do would frustrate this purpose. We reiterate, a trial court cannot sentence a defendant under the habitual criminal statute, *Code* 61-11-18, 19, unless the prosecution proves that each subsequent offense counting toward habitual criminal penalties, occurred after each prior conviction used in the calculation.

## VIII

Pratt questions the recidivist sentence imposed by the trial court after a jury found that petitioner was the same person who had been convicted of the two previous felonies in Pennsylvania. He was sentenced to two 20 year terms for the Westover and Acme robberies, and then sentenced to a life term under the recidivist statute, that term to run consecutively after the other terms. He states that the court had authority under *Code* 61-11-18, 19, to impose only one sentence, and the Attorney General, representing the State here, concedes this error.

The authority for defendant's point is *State ex rel. Cobb v. Boles*, 149 W. Va. 365, 141 S.E.2d 59 (1965):

It . is the view of this Court that under those circumstances the trial court had no authority to impose a one to ten year sentence upon the pris-

oner, that being the statutory penalty for the principal crime of which he had been convicted and not yet sentenced, inasmuch as under the provisions of Code, 61-11-18, as amended, it became the mandatory duty of the trial court to impose a life sentence in the penitentiary upon the prisoner. The language of that section is clear and the language will be repeated: '* * * the person shall be sentenced to be confined in the penitentiary for life.' at 63.

Accord: *State ex rel. Combs v. Boles*, 151 W. Va. 194, 151 S.E.2d 115 (1966); *State ex rel. Jorgenson v. Boles*, 149 W. Va. 395, 141 S.E.2d 139 (1965). *See also, Martin v. Leverette*, No. 14082 (W. Va. May 2, 1978).

## CONCLUSION

Any one of the errors in these trials would require that Pratt be tried again.

> *Reversed and remanded for new trials.*